## Chloe M. Field, executrix, v. Frances C. Field.

### Gen. No. 11,017.

1. WRIT OF ERROR—*when hearing of, at particular term, waived.* Appearing and arguing the merits involved in a writ of error proceeding, operates as a waiver to question the right of a plaintiff in error to have such proceeding heard at such term.

2. TRANSCRIPT OF RECORD—*verity given to, by Appellate Court.* The Appellate Court presumes absolutely the correctness of the transcript of the record filed for purposes of review, and such transcript cannot be successfully impeached by affidavits.

3. TRANSCRIPT OF RECORD—*how amendment of, made.* The Appellate Court will not undertake to amend the transcript of the record filed for purposes of review. If correction is sought to be made, it must be by application to the court from whence such transcript proceeded.

4. WIDOW'S AWARD—*jurisdiction of court of probate to determine who entitled to.* The court of probate has jurisdiction to determine which of two claimants is entitled to a widow's award.

5. WIDOW'S AWARD—*power of court of probate with respect to.* While the court of probate has no power to substitute its judgment for that of the appraisers making a widow's award, yet it has power to set aside such appraisement and direct the appraisers to make another.

6. WIDOW'S AWARD—*right to interest upon.* A widow's award is not such a judgment as bears interest under the statute.

7. FOREIGN DECREE—*effect to be given to.* A decree of divorce pronounced by a court of one state or country having the necessary jurisdiction over the subject-matter and the parties, must be recognized and given effect by the courts of other states and countries.

8. FOREIGN DECREE—*how, may not be impeached.* A decree rendered in one state of the union when proved in the courts of another, cannot be impeached for fraud in obtaining it, if rendered by a court having jurisdiction of the cause and the parties.

9. FOREIGN DECREE—*when, not entitled to faith and credit.* If the court rendering such a decree had no jurisdiction of the parties or of the subject-matter, the same is void and not entitled to faith and credit.

10. DIVORCE—*when no presumption of, arises.* No presumption of divorce arises from the subsequent remarriage of the person claiming to be, but who was not actually, divorced.

Contest in court of probate over right to widow's award. Error to the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed in part. Opinion filed October 4, 1904. Rehearing denied November 11, 1904. Opinion modified and refiled November 11, 1904.

Statement by the Court. This is an action in which, according to the attorney for the defendant in error, it is sought to determine " who is the widow of James H. Field, deceased." It originated in the Probate Court of Cook county, where a petition was filed by defendant in error, and a cross-petition was filed by plaintiff in error (hereinafter referred to as defendant and plaintiff respectively), each asking to be paid the widow's award. The Probate Court found in favor of defendant. The plaintiff appealed to the Circuit Court where the finding was again in favor of the defendant, and from the judgment of that court the plaintiff prosecuted this writ of error.

The defendant, Frances C. Field, was lawfully married to James H. Field in August, 1850, in the State of New York. They lived together as husband and wife until the year 1869. At that time they were living on Fulton street, in Chicago. Field then abandoned his wife and went to live elsewhere in the city. At that time six children had been born to them. In September, 1875, the husband filed a bill in the Superior Court of Cook county praying for a divorce on the alleged ground of cruelty and desertion. The wife contested, and upon the hearing the jury found the issues in her favor. The husband's bill was subsequently dismissed. In December, 1878, James H. Field filed another petition for divorce, this time in Boone county, Nebraska. In that petition he alleged that he had been a resident of Nebraska for a year; that he was then a resident of Boone county; and charged that his wife, the defendant, Frances C. Field, had been guilty of extreme cruelty toward him, the same charge which he had failed to sustain in the Superior Court of Cook county, Illinois. The petition was sworn to by the deceased, who filed his affidavit stating that personal service could not be had upon Frances Field in the State of Nebraska. There is also in that record a notice " to Frances Field, residence unknown," of the taking of depositions of witnesses, all of whom appear to have resided in Chicago, Illinois. A decree was entered by the Nebraska court finding Frances Field in default, stating

that the court is "satisfied that said defendant had been legally served with notice of the pendency of this suit as provided by statute," finding that the allegations of the petition are true and granting to the petitioner a divorce from Frances Field and the custody of the two minor children.

There is evidence undisputed in behalf of the defendant, Frances C. Field, tending to show that she had no notice nor knowledge of the Nebraska proceeding nor of the decree of divorce until after the death of James H. Field in 1894. She was living at the time that decree was obtained at the place in Chicago where she was living with James H. Field, her husband, at the time when he abandoned her, where she continued to live thereafter, and where he was addressing letters to his daughter while the Nebraska proceeding was pending. Nevertheless the notice to take depositions in that case was addressed " to Frances Field, residence unknown." There is conflicting evidence as to whether James H. Field was in fact a resident of Nebraska at all, as the Nebraska statute required, during the six months preceding the filing of his petition for a divorce in that state.

In April, 1879, James H. Field was married to Chloe Matteson, plaintiff herein as Chloe M. Field, at Decorah, Iowa. They continued to live together thereafter in Chicago, Illinois, as husband and wife, until his death in 1894. It is asserted in behalf of defendant that Field had been living with Chloe Matteson ever since 1869, when he originally abandoned the defendant, and that she, the defendant, was not aware of any marriage or other change in the alleged relationship between Field and the plaintiff, nor that Chloe Matteson called herself Chloe Field, although they were openly living as man and wife at a family hotel within a few blocks of the defendant's residence more than fourteen years preceding the death of Field.

James H. Field died July 21, 1894. Defendant filed her petition for letters of administration which were issued to her. Subsequently the will of James H. Field was pro-

bated which, after giving one thousand dollars to Edna, daughter of himself and defendant in error, gave the rest of his estate to his "beloved wife, Chloe M. Field." Thereupon the letters previously issued to the defendant were revoked. The widow's award was fixed by the appraisers at $1,200.

STORY, RUSSELL & STORY, for plaintiff in error.

A. J. REDMOND, for defendant in error; AVERY R. HAYES, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Plaintiff in error filed what purported to be a short record in this cause and upon motion made in apt time was allowed an extension of time in which to file the complete record. Subsequently defendant in error moved to vacate that order, which motion was reserved to the hearing. The short record contained what purported to be a final judgment, and upon its face was sufficient basis for the extension. The order of extension was proper, therefore, when entered, and there is no necessity of vacating it. Defendant might perhaps have objected to the plaintiff's right to prosecute the writ of error at the term when the record was filed. But plaintiff had plenty of time before the expiration of the five years allowed by law in which to prosecute her writ of error, and defendant has appeared and waived any objection she might otherwise have made to the consideration of the cause at this term.

It is further alleged that plaintiff cannot prosecute as executrix, because it is claimed she has since the entry of the final order appealed from been removed as executrix by the Probate Court. There is nothing in the record showing such removal, and the cause is before us on the record and not on affidavits relating to matters alleged to have occurred since the entry of the judgment complained of. The transcript in this case has some peculiar features, and it is claimed that an order appearing in the record is not the order actually entered by the Circuit Court. If so the

record should be corrected in that court. We cannot make the correction here.

We have no doubt the Probate Court had jurisdiction to determine who was entitled to the widow's award under its general powers in supervising the administration of estates, and this power continued while the settlement of the estate was still pending in that court. The appraisers are required by statute to make the award to the widow, and while the court has no power to substitute its judgment for that of the appraisers or to modify the appraisement, it has power to set aside an appraisement and direct the appraisers to make another. Miller v. Miller, 82 Ill. 463-470; Marshall v. Rose, 86 Ill. 374-376. The award is to go "to the widow," not to some one else, and it is made subject to the approval of the Probate Court. The power to determine who is the widow necessarily resides in the court by whose order the award is paid. In Ennis v. Ennis, 110 Ill. 78-81, it is said that "the probate court has general jurisdiction in all matters touching the settlement and administration of the estates of deceased persons, and orders concerning the widow's award come within the scope of that general jurisdiction."

The rights of the parties depend mainly upon the effect to be given the decree of the Nebraska court entered in 1879, granting James H. Field a divorce from Frances C. Field, defendant in error. There can be no reasonable doubt from the evidence that James H. Field intended to and did obtain the Nebraska decree without personal summons upon or notice to his wife. She states that she knew nothing of that proceeding until after his death nearly sixteen years afterward, and in this she is not successfully contradicted. She did know that he was living with the plaintiff in error, but supposed the relation between them to have no legal sanction more than when she claims it began at the time when James H. Field first deserted his legal wife and the mother of his children. The Nebraska decree was obtained upon the ground of alleged cruelty, a charge upon which James H. Field had vainly

sought to obtain a divorce in this state three years before. At that time upon a full hearing a jury found the issues of fact against him and he was defeated before the court in that litigation. In the Nebraska suit the wife was given no opportunity to be heard and was not heard in her own defense. In this state and before its courts James H. Field must be regarded as not entitled to a divorce upon the grounds on which the Nebraska decree rests.

There is evidence tending to show that fraud was practiced upon the Nebraska court. There can be no question that James H. Field knew his wife's residence, but the notice to take depositions for use in the Nebraska court was made to state that her residence was unknown. There is also evidence tending to show that James H. Field was not in fact a resident of Nebraska at any time, although his petition for a divorce there alleges that he had been such a resident a year prior to the time when it was filed. The statute of that state required a residence of six months preceding the filing of his petition. Apparently he never became in good faith a resident of that state.

A decree of divorce pronounced by a court of one state or country having the necessary jurisdiction over the subject-matter and the parties, must be recognized and given effect by the courts of other states and countries. See A. & E. Ency. of L., Vol. 13, p. 1021, and cases there cited. A judgment recovered in one state of the Union, when proved in the courts of another, is not impeachable for fraud in obtaining it, if rendered by a court having jurisdiction of the cause and the parties. Ambler v. Whipple, 139 Ill. 311–324. In the case last cited it was held that a plea of fraud is not admissible in actions on judgments of sister states where there was jurisdiction of the person and the subject-matter, and the pleas did not question the jurisdiction. See, also, Roth v. Roth, 104 Ill. 35–46. In the case last mentioned, however, it is said (p. 47) that there is a limitation to the rule above stated; that it may be shown that such foreign judgment or decree was obtained by fraud or some gross abuse of the process of the court (citing

Baker v. Palmer, 83 Ill. 568–574). The later cases in this state seem to regard the foreign judgment unimpeachable for fraud alone, where there was jurisdiction of the parties and the subject-matter. But in Dunham v. Dunham, 162 Ill. 589–614, also p. 617, it was again held that inasmuch as appellant in that suit was guilty of fraud upon the foreign court in South Dakota and upon the public in obtaining her decree there, it was therefore void.

Independently, however, of the question of fraud in obtaining the decree in Nebraska, if the court in that state had no jurisdiction of the parties or the subject-matter, its decree is void and not entitled to faith and credit in this state. As to a foreign judgment, it is held by the United States Supreme Court to be " perfectly well settled that the inquiry is always open, whether the court by which it was rendered had jurisdiction of the person or the thing," and this notwithstanding the averments in the record of the judgment itself. Thompson v. Whitman (18 Wallace), 85 U. S. 457. In this state, also, the question of jurisdiction is not concluded by the decree of the foreign court, but is open to inquiry here. Dunham v. Dunham, *supra*, p. 618. If it appears that James H. Field was not in fact and law a *bona fide* resident of Nebraska when he began his suit there, that court had no jurisdiction of the subject-matter or of the parties under the statutes of that state. It is, we think, perfectly clear from the evidence that James H. Field went to Nebraska and commenced his suit there solely for the purpose of secretly obtaining there the divorce which had been denied him in the courts of this state upon a full hearing, and that he had no intention of permanently residing there. He did not permanently reside there. Granting that he had even a temporary residence in Nebraska, he returned to Illinois as soon as, if not before, his decree had been obtained and continued to reside here until his death. He had no such residence in Nebraska as was required to give the courts of that state jurisdiction in the divorce proceeding. It clearly appears that defendant in error was not personally served with

notice or process in that suit, either within the jurisdiction of the Nebraska court or elsewhere. She never appeared in that court, and the decree was based wholly upon constructive or substituted service. Under the circumstances such service gave the District Court of Boone county, Nebraska, no jurisdiction, and its decree was therefore void.

There is in this case no presumption of divorce growing out of the relations of James H. Field with plaintiff in error, or the marriage ceremony performed between them subsequent to the Nebraska decree. If the connection between them was meretricious in its inception it continued such unless followed by a lawful marriage. Potter v. Clapp, 203 Ill. 592–598. The plaintiff in error relied upon the Nebraska divorce and on that alone as making the subsequent marriage valid. As that decree of divorce was invalid and there is no pretense of any other divorce having been obtained by Field in his lifetime, whatever presumption of validity might be indulged otherwise is removed.

The decree of the Circuit Court allows interest on the widow's award from the date when it was first allowed and set off. This is erroneous. As said in Stunz v. Stunz, 131 Ill. 210–220, "such award is not a judgment, within the meaning of section 3 of the statute relating to interest. The judgment there mentioned is a money judgment." As the court further says in that case, while for some purposes the award may be treated as a judgment, it yet lacks essential characteristics thereof.

It follows from what has been said that defendant in error, Frances C. Field, was the wife of James H. Field at the time of his death, and that as his widow she is entitled to the award. The order of the Circuit Court must therefore be affirmed, except as to the allowance of interest, as to which it must be reversed.

*Affirmed in part.*

PER CURIAM:

In a petition for rehearing it is urged in behalf of defendant in error that interest should be allowed upon the widow's award from the date when the said award was

by the Probate Court ordered to be paid. The order of the Probate Court provided " that the prayer of the petition of said Frances C. Field be granted and that distribution of said widow's award be made to her within five days from this date." This cannot be deemed a ·judgment such as should draw interest under the statute. Section 74, chapter 3 of the Revised Statutes, making provision for a widow's award, provides that the widow may, if she elect, take and receive in lieu of personal property allowed as part of her award " the same personal property or money in place thereof." The Probate Court merely ordered " that distribution of said award be made to her (Frances C. Field) within five days from the date of such judgment." This in view of the provision of the statute above referred to cannot be regarded as a judgment for money entitled to draw interest under section 3, chapter 74 of the Revised Statutes.