M. Helen Laxy, Plaintiff-Appellee, v. Harold Laxy, Defendant-Appellant.

Gen. No. 10,724.

Opinion filed July 14, 1954.
Released for publication July 30, 1954.

WINSTEIN & RIMMERMAN, of Rock Island, for appellant; STEWART R. WINSTEIN, and HERBERT A. SALZMAN, both of Rock Island, of counsel.

SAM F. SKAFIDAS, of East Moline, and SIDNEY S. DEUTSCH, of Rock Island, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

M. Helen Laxy filed her complaint for divorce in the circuit court of Rock Island county on August 31, 1951, charging her husband, Harold Laxy, with extreme and repeated cruelty. The complaint named two specific occasions, April 15, 1945, and January 18, 1950, and charged that upon these dates and upon numerous other occasions the defendant struck the plaintiff in the face with his hands, causing her face and jaw to become swollen and bruised; that he also choked and beat her severely, all without provocation and causing her great pain and suffering. The complaint alleged that the parties acquired during their marriage six rooms of household furniture, a 1939 Tudor Ford automobile and a described lot in the Village of Carbon Cliff which was improved with a $5,000 dwelling, the unencumbered title thereto being in the plaintiff and defendant as joint tenants.

The complaint further alleged that the parties were married on December 12, 1933, and that they lived and cohabited as wife and husband until January 18, 1950; that two children were born to the parties, a daughter fourteen years of age and a son ten years old; that on

157

October 17, 1950, which was after their separation which occurred on January 18, 1950, an order was entered by the county court of Rock Island county adjudging the defendant to be mentally ill and placing him in the care of the Department of Public Welfare and committed him to the East Moline State Hospital, where he was an inmate at the time the complaint was filed.

The complaint prayed for a divorce, support, attorney fees, for an equitable disposition of the real and personal property owned by the parties, for the appointment of a guardian *ad litem* to appear for and represent the defendant, and for such other relief as equity may require. Personal service was had on the defendant, and on October 19, 1951, the court appointed Joseph Ryan guardian *ad litem* for the defendant under disability. A formal answer was filed by the guardian *ad litem* reciting that the defendant was an insane person, under legal disability and did not have sufficient information to form a belief as to the matters and things alleged in the complaint and demanding strict proof. A hearing was had and a decree rendered on October 19, 1951 finding the necessary jurisdictional facts and that the defendant was guilty of extreme and repeated cruelty as charged and that the parties lived and cohabited as wife and husband until January 18, 1950; "that on October 17, 1950, an order was entered by the County Court of Rock Island County adjudging the defendant to be mentally ill and placing him in the care and custody of the Department of Public Welfare, East Moline State Hospital, East Moline, Illinois, and he was then and there so committed and is now an inmate of said hospital and has no conservator." The decree specifically found that the defendant was under no disability and not an insane person prior to October 17, 1950, and that the acts of cruelty committed by defendant upon the plaintiff took place prior to October

17, 1950, and that the parties acquired the real and personal property described and referred to in the complaint.

The decree granted the plaintiff a divorce from the defendant, awarded her the custody and care of the children, granted and awarded to the plaintiff the household furniture and automobile and the right to occupy and lease the residence property, the decree reciting: "it being the intention of the court to provide a home for the plaintiff and said minor children; that the title to said premises shall remain in the parties undisturbed except that the defendant is hereby barred from asserting any claim of dower in the interests of the plaintiff in said real estate; that the matter of the disposition of the ownership of said property is reserved by the court with the full right of the court to modify this decree hereafter as conditions may warrant full recognition being given to the fact that the defendant by reason of his mental condition is unable to support the plaintiff or their minor children."

On November 21, 1952 the defendant, represented by his present counsel, filed his motion supported by his affidavit praying that the decree of divorce rendered on October 19, 1951 be vacated. Upon a hearing this motion was denied and defendant appeals.

The affidavit filed by appellant in support of his motion to vacate the decree, after reciting that he, appellant, was of full legal age and under no disability continued:

"Affiant further states that he was the defendant in the above entitled cause, wherein the plaintiff obtained a divorce on October 19, 1951; that on October 17, 1950 in a proceedings in the County Court of Rock Island County, Illinois, the defendant was adjudged mentally ill, and incapable of caring for himself and his estate; that thereupon he was committed to East Moline State

Hospital, where he remained until December 7, 1951, at which time he was released to family care, but was not restored to his full civil rights; that thereafter on September 9, 1952 this affiant was released and discharged; that at such time he consulted F. Joseph Ryan, as attorney at law heretofore appointed Guardian Ad Litem for him, and was advised by the said F. Joseph Ryan that he had consulted with plaintiff's attorney, Sam F. Skafidas; that thereupon intermittently thereafter this affiant consulted with his attorney in an effort to arrive at a settlement of the property rights and other matters in dispute between him and his wife, the said M. Helen Laxy; that thereupon on November 14, 1952, this affiant consulted Stewart R. Winstein, his present attorney, and was advised by said attorney to institute an action to vacate the decree of divorce hereto entered against him.

"Affiant further states that the plaintiff, in her complaint for divorce, alleges that on two certain dates, alleged in said complaint, defendant struck and otherwise used physical violence towards her, which said allegations are hereby explicitly denied by this affiant, together with the remaining allegations of cruelty which this affiant hereby denies.

"Affiant further states that he never at any time following the appointment of the said F. Joseph Ryan as his Guardian Ad Litem, and prior to the entry of the decree of divorce herein, was consulted by the said F. Joseph Ryan, nor was a continuance sought on behalf of this affiant by his said Guardian Ad Litem, and that as a consequence of the entry of the decree of divorce herein he has been unjustly deprived of his right to defend said action for divorce, and of his right to the custody of his minor children born to his marriage."

Appellant contends that the decree in this case is voidable because the guardian *ad litem* failed to defend

this suit. Counsel argue that the record in this case discloses that the plaintiff made no more proof of her case than is required of a plaintiff in a default divorce suit: that the case proceeded exactly as upon a technical default of the defendant: that the guardian *ad litem* did not acquaint himself with the case and never consulted with the defendant and therefore could not determine what defense to make; that while it appears the guardian *ad litem* sat in at the trial and made a pretense at cross-examining the witnesses who testified for the plaintiff, he made no objections to the testimony elicited on direct examination and offered no evidence on behalf of the defendant. From these facts, counsel conclude the guardian *ad litem* was unfaithful to his client and was only a straw man for the plaintiff to protect her case; that the guardianship was set up to give lip service only to the requirements of the law; that unhappily the guardian *ad litem* so conceived his role, leaving the rights and interests of the defendant without the protection required by law and without giving the defendant the defense, in fact, which the law expected of him. Counsel for appellant cite and rely upon *McReynolds v. Miller*, 372 Ill. 151 and counsel for both parties call our attention to *Stunz v. Stunz*, 131 Ill. 210 and *McCarthy v. Cain*, 301 Ill. 534.

*McReynolds v. Miller*, 372 Ill. 151 was an appeal by James W. McReynolds from a decree dismissing his complaint which sought to impeach a decree rendered by the circuit court on January 27, 1932 which decree set aside and expunged the record of a deed to certain real estate, executed by the plaintiff in that suit, Mary J. McReynolds to the said James W. McReynolds. The basis of the decree was that the deed had never been delivered and was recorded by mistake. It appeared that Mary J. McReynolds had died on April 11, 1937 and her heirs and the administrator of her estate were

named as defendants in the proceeding instituted by James W. McReynolds to impeach the former decree.

The complaint to impeach the former decree charged that the decree was not supported by competent evidence and that the rights of the plaintiff in the original proceeding were prejudiced by the gross neglect of his guardian *ad litem*. At the time the original decree was rendered James W. McReynolds was seventeen years of age. He was served with process and a guardian *ad litem* was appointed for him. In reversing the decree of the circuit court, the Supreme Court, in the course of its opinion said (p. 153): "No evidence in behalf of appellant was introduced and much improper evidence crept into the record. Many of the questions on vital issues were highly objectionable on the ground they were leading, and in much of the testimony witnesses testified to matters of law and others of which they could not have had positive knowledge. These errors cannot be allowed to prejudice the rights of appellant. When the property rights of an infant are in litigation and the infant is in court, he at once becomes the ward of the court, whose duty it is to see that his rights are properly protected. The law contemplates a defense, in fact, so far as is necessary to protect the interests of the ward. The court is bound to specially guard the interests of minors, and to notice legitimate and substantial objections whether raised by the guardian or not. It is error to enter against a minor a decree not supported by competent evidence. (*Lloyd v. Kirkwood, supra; Tymony v. Tymony,* 331 Ill. 420; *Harris v. Young,* 298 Ill. 319; *Cartwright v. Wise,* 14 Ill. 417.) Appellant's rights were obviously not properly safeguarded in the original suit. It is our province to determine whether the decree was sustained by competent evidence, considered with the evidence introduced by appellant in this suit." The court then reviewed the evidence and held that the

162

record clearly showed that the deed was delivered without reservation and was placed by the grantor out of her control.

■ *Stunz v. Stunz,* 131 Ill. 210 was a proceeding instituted by the widow of Carl Stunz in the superior court of Cook county seeking the partition of certain premises which had belonged to her deceased husband and prayed for partition, the assignment of homestead, the payment of her widow's award and for other relief. The defendants were Carl Stunz's minor children by a former marriage and the terre-tenants. Service was duly had and a guardian *ad litem* appointed and the cause proceeded to a decree under which the premises were sold, the sale approved and the master's report of distribution confirmed. Thereafter the minor defendants sued out a writ of error to review the record of the superior court and also filed an original proceeding to impeach the decree for fraud, charging that the widow had entered into a fraudulent combination and agreement with the guardian *ad litem,* in pursuance of which the rights and interests of the minors were sacrificed and a like combination with the commissioners whereby they were induced to appraise the property at substantially one-half of its real value. The court reviewed the record and held the decree of the superior court erroneous and that the guardian *ad litem* had entirely disregarded his duty to defend and protect the interests of the infant defendants. In the course of its opinion the court said (pp. 221, 222) "It is the duty of the guardian *ad litem,* when appointed, to examine into the case and determine what the rights of his wards are, and what defense their interest demands, and to make such defense as the exercise of care and prudence will dictate. He is not required to make a defense not warranted by law, but should exercise that care and judgment that reasonable and prudent men exercise, and submit to the court, for its

determination, all questions that may arise, and take its advice, and act under its direction in the steps necessary to preserve and secure the rights of the minor defendants. The guardian *ad litem* who perfunctorily files an answer for his ward, and then abandons the case, fails to comprehend his duties as an officer of the court: Had the guardian *ad litem* in this case properly discharged the duties of his office, it is not probable that the learned chancellor who heard the cause would have entered this decree. No objection seems to have been interposed at any stage of the case nor attention called to the grave errors into which the court has fallen. It was his duty to have understood the cause and the rights of the parties and to have called the attention of the court thereto, while the guardian *ad litem* will not be warranted in interposing useless or vexatious defenses, the law contemplates a defense in fact, so far as necessary to protect the rights and interests of the ward. The failure of the guardian in this regard, while forming of itself no sufficient ground of reversal, was a grave irregularity, and undoubtedly led the court into most, if not all, of the errors, found in the decree."

In *McCarthy v. Cain*, 301 Ill. 534 it appeared that Joseph Cain died on February 25, 1920 leaving a purported will by the provisions of which he devised 240 acres of land to his two nephews, then sixteen and seventeen years of age respectively. The mother of these two boys was named executrix of the will and she filed her petition in the probate court of Macoupin county to probate the will. Upon a hearing probate was refused on March 29, 1920. On January 11, 1921 the nephews, by their father as their next friend filed in the county court a petition to vacate and set aside the order refusing probate on the ground of fraud, accident and mistake and accompanied their petition with affidavits of the two subscribing witnesses and

164

with affidavits of four other persons all of whom stated that they were well acquainted with the testator and that he was of sound mind and memory and capable of transacting business at the time of the execution of the will. The petition was dismissed by the county court and an appeal was taken to the circuit court which dismissed the petition and the petitioners appealed.

In the course of its opinion which reversed the judgments of the county and circuit courts the court said that the order denying probate of the will should be set aside and a hearing had upon the petition to probate the will, at which the interests of the minors should receive actual consideration and protection. The court cited and quoted from *Stunz v. Stunz,* 131 Ill. 210 and then said: (pp. 539–540) "The appointment of a guardian *ad litem* is not a mere formality, and unless it is so, no reason can be given for setting aside the judgment or decree against a minor without the appointment of a guardian *ad litem* to represent him in the suit which is not equally applicable to a judgment where a guardian *ad litem* has been appointed but has wholly failed to represent the minor in the suit and has permitted judgment to be entered against him without presenting any defense or taking any action to protect the minor's interests. It is not a sufficient answer to say that the record shows that the court appointed a guardian *ad litem,* when the proof shows that beyond the naked appointment nothing whatever was done to call the rights of the minors to the attention of the court, to present their interests and claim for them such protection as under the law they were entitled to. In this case more than four-fifths of the estate consisted of real estate and the will devised it all to these two minors. The petition for probate was presented by their mother, who would inherit one-third of the estate if the will was not admitted to probate.

The probate was opposed by their uncle, Thomas Cain, who would also inherit one-third of the estate. The minors themselves were not heirs of their uncle, the testator. The witnesses to the will were examined in chief and were then cross-examined by Thomas Cain, the uncle. No examination or cross-examination was attempted in the interest of the infants. It appears from the affidavits of the witnesses attached to the petition that they misunderstood the meaning of the questions put to them on the hearing as to the testamentary capacity of Joseph Cain, and understood those questions to be as to the actual sanity or insanity of the testator rather than to the opinion and best judgment of the witnesses, and that they then honestly believed, and still believe, that at the time Joseph Cain made his will he was of sound mind and memory. Had the guardian *ad litem* performed his duty at the hearing the will might or might not have been admitted to probate, but the case of the minors who were interested would have been presented to the court and their rights and interests protected and this was not done. Everybody in court was hostile to the minors. The guardian *ad litem* abandoned the conduct of the hearing to the two heirs, who would receive two-thirds of the estate if the will was not admitted to probate, and made no effort to represent the minors, with the result that they lose the 240 acres of land devised to them while those to whom the guardian *ad litem* surrendered the hearing profit to the extent of two-thirds of their loss."

There is nothing said in the opinions in the *McReynolds, Stunz* or *McCarthy* cases concerning the duties of a guardian *ad litem* to which we do not subscribe. Counsel for appellant states that the failure of the guardian *ad litem* in the instant case to interpose a defense stems from the fact that the guardian *ad litem*

did not consult appellant and therefore could not determine what defense to make. There is no merit in this contention because the record discloses that on October 17, 1950 appellant was adjudged mentally ill and placed in the custody of the Department of Public Welfare and committed to the East Moline State Hospital and was there at the time the complaint was filed on August 30, 1951 and was there at the time the order appointing the guardian *ad litem* was entered and was there at the time the hearing was had and at the time the decree was rendered on October 19, 1951. The decree so finds.

In the instant case the guardian *ad litem* filed an answer which recited that appellant was an insane person and under legal disability and that he did not have sufficient information to form a belief as to the charges set forth in the complaint and demanded strict proof of those charges. At the hearing defendant was represented by his guardian *ad litem* who participated in the hearing and cross-examined the plaintiff and the other witnesses. From the record we are unable to say the guardian did not properly and adequately discharge all the duties required of him. The record discloses that the evidence introduced upon the hearing sustained the allegations of the complaint and the decree which was rendered was based upon the evidence and was fair, just and equitable in all of its provisions.

The statement in the affidavit of appellant in support of his petition to vacate the decree to the effect that after he was released and discharged from the East Moline State Hospital he consulted with his guardian *ad litem* who in turn consulted with appellee's attorney in an effort to arrive at a settlement of the property rights and other matters in dispute between the parties hereto indicates that appellant's primary

167

interest may be his property rights. The decree however left undisturbed the title to the real estate and reserved the disposition of its ownership.

In our opinion the record in this case discloses that the guardian *ad litem* fully and ably protected the personal and property rights of his ward. The record fails to disclose any culpable omission or neglect on the part of the guardian *ad litem* and he performed the duties required of him and exercised the care and prudence which the law and the facts require. The chancellor did not err in denying the prayer of the petition of appellant to vacate the decree and that order will be affirmed.

*Order affirmed.*

WOLFE, J., concurs.

MR. PRESIDING JUSTICE ANDERSON took no part in the consideration or decision of this case.