## CATHARINE STUNZ *et al.*

### *v.*

## MARIA STUNZ.

*Filed at Ottawa January 21, 1890.*

1. PARTITION—*decree—declaring the rights of the parties.* In proceedings for the partition of real estate, the court is required to ascertain and declare the rights, titles and interests of all the parties, and give judgment accordingly.

2. A person died seized of real estate occupied as a homestead by himself, his wife, and three children by a former wife. After his death another child was born, which died, leaving its mother and three brothers and sisters of the half blood as its only heirs, so that the widow took one-tenth of the estate by descent and the three surviving children took each three-tenths. On bill by the widow for partition, the court found that the widow had a homestead in the property, but failed to find that the minor defendants had any homestead interest therein : *Held,* that the court erred in not finding the rights of the defendants in the homestead.

3. SAME—*homestead—apportionment—in case of a sale.* In partition of land subject to a widow's right of homestead therein, where the homestead can not be set off, and the premises are ordered to be sold, it is error to give the widow $1000 of the proceeds of the sale. The value of the homestead right should be found and paid her, or $1000 should be invested, and the proceeds only paid her during her life.

4. SOLICITOR'S FEES—*in partition.* Where a solicitor in a suit for the partition of land does not represent the interests of all the parties alike, but it is evident that the suit has been conducted with unfairness toward the defendants, and in reality is hostile to their interests, it will be error for the court to require such defendants to pay any portion of the petitioner's solicitor's fee.

5. WILLS—*widow—dower—homestead—failure of widow to renounce the will.* Where a will gives a widow one-third of the net income of the testator's real estate for life, and the right to live on his homestead, but not to the exclusion of his children, until she shall marry again, and she fails to renounce the will, she will take no dower or estate of homestead under the statute. Whatever rights the widow may take in her husband's real estate, she will derive under the will. The general rule is, that if a widow takes under a will, she will be bound by its provisions.

6. So in case the provisions made by will are inconsistent with the homestead estate given by the statute, and the widow of the testator

elects to take under the will, she can not claim the homestead under both the statute and the will.

7. SAME—*widow's rights limited to the period of widowhood.* A party, by his will, devised to his wife one-third of the net income of all his real estate during her natural life, and provided therein that she should "enjoy the right to live on" his homestead, "but not to the exclusion of" his children, until she should again marry : *Held,* that under such provision the wife took only the right to enjoy the homestead in common with the children during her widowhood.

8. INTEREST—*on widow's award.* The widow's award in her husband's estate is not a judgment, within the meaning of section 3 of the act relating to interest. It is error to allow interest on the award, at any rate before the widow has made her election to take in money.

9. GUARDIAN AD LITEM—*his duties.* It is the duty of a guardian *ad litem* to examine into the case, and ascertain the rights of his wards, and interpose such defense as their interest demands. He is not required to make an unwarranted defense, but should use the care and judgment of a reasonably prudent man. He should submit questions that may arise, to the decision of the court, and act under the directions of the court.

10. ABATEMENT—*writ of error pending—subsequent suit to impeach the same decree.* The pendency of a bill by infants to impeach a decree against them, for fraud, and also for errors apparent on the face of the record, in which persons other than those in the prior suit are made parties, is no ground for dismissing or abating a writ of error sued out to reverse the same decree, as the matters set up in the bill are not the same as those involved in the writ of error, and for the further reason the parties in the two suits are not identical.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. EGBERT JAMIESON, Judge, presiding.

This was a bill for partition, filed by Maria Stunz, in the Superior Court of Cook county, against Catharine, Louisa and Mina Stunz, September 23, 1887. The bill alleges that Carl Stunz, the husband of the complainant, died March 8, 1885, leaving a will, which was duly probated, and seized in fee of a certain lot; that under the will, complainant is entitled to her one-third interest in the net income derived from said lot of land and premises during her natural life; that Catharine, Louisa and Mina Stunz, the children of Carl Stunz by a for-

mer marriage, are his only residuary legatees; that said Carl Stunz left him surviving, the complainant, his widow, and said children, only; that subsequent to his death there was born a son, who died August 8, 1885, leaving complainant, his mother, and said Catharine, Louisa and Mina, his half-sisters, his only heirs-at-law; that certain persons named were tenants in possession of the premises, which were the homestead of the testator, and that complainant, at the time of his death, resided, and ever since has resided, on the premises, and is entitled to her homestead interest therein to the value of $1000; that more than two years have elapsed since the grant of letters testamentary, and no debts have been established against the estate, except the widow's award; that said award (for $1340) was allowed September 29, 1875, and complainant has been paid thereon $136.30, leaving a balance due her of $1203.70; that complainant is seized in fee of an undivided one-tenth interest, and the said Catharine, Louisa and Mina are each seized of an undivided three-tenths interest in said premises, all subject to complainant's homestead interest, and to the payment of the balance of her award, and to the value of complainant's right to one-third of the net income of said premises during her natural life; that there was no other real estate owned in common by the parties or other persons interested therein. The bill makes plaintiffs in error and the *terre* tenants parties, prays for partition, for homestead, the payment of her award and her one-third interest in the income, and for guardian *ad litem* for plaintiffs in error. Attached to the bill is a copy of the will, which is as follows:

"I, Carl Stunz, of the city of Chicago, county of Cook and State of Illinois, being of sound mind and memory, do hereby publish and declare this my last will and testament, in manner following:

"*First*—I give, devise and bequeath unto my beloved wife, Maria Stunz, born Dietz, one-third of the net income of my real estate during her natural life.

"*Second*—My said wife shall enjoy the right to live on my homestead, but not to the exclusion of my children, until she shall marry again.

"*Third*—I give and devise unto my said wife the net income of the estate of those of my minor children begotten by her, during their minority, unless she marry again, in which case her right to the income of my minor children's estate shall at once cease.

"*Fourth*—As long as my said beloved wife remains my widow and not marry again, she shall be guardian of my children of my former marriage, without being required to give bond for her guardianship.

"*Fifth*—All the rest, residue and remainder of my estate is to be distributed in equal shares among all of my children.

"*Sixth*—I hereby nominate and appoint my said beloved wife sole executrix of this my last will and testament, and waive her giving security for the true and faithful performance of this trust. I hereby revoke all former wills by me made.

"Witness my hand and seal this 8th day of May, 1883."

After service upon the defendants in the partition bill, and the taking of a default as to the tenant defendants, a guardian *ad litem* was appointed for plaintiffs in error, and his answer, and complainant's replication thereto, were filed, and the cause referred to a master, on the same day, to-wit, November 10, 1887. Eleven days later, November 21, 1887, the master filed his report, in which he found that complainant was entitled to a partition of the premises; that the allegations of her bill were sustained by the proofs; that she had a one-tenth interest in the premises as tenant in common with plaintiffs in error, each of whom was entitled to an undivided three-tenths, subject to the life estate of complainant in one-third of said premises, and to her right of homestead in the whole of them, and to the payment of the unpaid balance of her widow's award. On the same day upon which the master's report was filed, a decree was entered, based upon the report, and finding,

among other things, "that said Maria Stunz has a homestead interest in said premises of the value of $1000;" that more than two years have elapsed since the granting of letters, as aforesaid, upon the estate of Carl Stunz, deceased, and that no debts have been established against said estate except the widow's award in the sum of $1340, and that there has been paid upon the same $136.30, leaving a balance due the said Maria Stunz of $1203.70, which is a valid claim against said estate, with interest from the time of its allowance, to-wit, September 29, 1885; that said Maria Stunz is seized in fee of an undivided one-tenth, Catharine Stunz of an undivided three-tenths, Mina Stunz of an undivided three-tenths, and Louisa Stunz of an undivided three-tenths of said premises, all subject to said homestead interest, said bequest to said Maria Stunz, and the balance remaining unpaid on said sum allowed by said probate court. The decree then orders a partition of the premises among complainant and the children, according to their interests as found therein, "subject, first, to the payment to said Maria Stunz of the said value of her homestead, and of the value of one-third of the income of said estate as bequeathed to her, and to the sum allowed by said probate court, to-wit, $1203.70," and appoints commissioners to make partition.

December 9, 1887, the commissioners reported that the premises were not susceptible of division, and were worth $5125. On the same day another decree was entered confirming the report of the commissioners, ordering a sale of the premises by the master, and in case his report of sale be confirmed, directing him "to assess the value of the homestead, the dower interest and unpaid balance of the widow's award, as heretofore found by this court, together with all costs and charges of this proceeding, and solicitor's fees, to deduct and pay the same out of the proceeds of said sale, and to execute to the purchaser of the premises proper deeds of conveyance therefor."

On the 4th of January, 1888, the master sold the premises to defendant in error for $5100, and on February 3 following, filed his report thereof. On the same day that he filed his said report, the same, and all proceedings connected with said sale, and the sale itself, were approved and confirmed by the order of the court. Six days later the master filed another report, finding that upon proofs taken before him, complainant's solicitor was entitled to $200 for his services, and that complainant herself was entitled to $882.80, as the present value of her life interest in said premises, and to the further sum of $1369.20, as the amount of her widow's award, with interest. On the same day that this last report was filed, the same was confirmed by the court, the order providing, "that the said master, upon a final distribution of the proceeds in said cause, pay to the complainant's solicitors the sum of $200, and the said Maria Stunz the said sum of $882.80, (the value of her life interest,) and the further sum of $1369.20, as the value of her award allowed by the probate court of Cook county.".

On March 1, 1888, the master filed his report of distribution, from which, and the receipts thereto attached, it appeared that he had, as master, conveyed the premises to defendant in error; that her solicitor received said fee of $200, and she herself $3402.05, made up as follows: For homestead, $1000; life estate, $882.80; widow's award and interest, $1369.20; and her distributive share, $150.05,—and each of the children received $450.15. The report of distribution was confirmed by an order of the court on the same day it was filed.

Messrs. Kraus, Mayer & Stein, for the plaintiffs in error:

The decree erroneously deprives plaintiffs in error of their right of homestead; but if that interest is still in them, it was error not to so find in the decree. *Capek* v. *Kropik*, 129 Ill. 509.

· The decree must declare the estates and interests of all parties. *Gage* v. *Bissell,* 119 Ill. 301; *Kilgour* v. *Crawford,* 51 id. 249; *Hickenbotham* v. *Blackledge,* 54 id. 316; *Knapp* v. *Gass,* 63 id. 492.

It was error to allow Mrs. Stunz $1000 for her alleged homestead. *Merritt* v. *Merritt,* 97 Ill. 243; *Cowdrey* v. *Hitchcock,* 103 id. 262.

The court erred in ordering the payment of the widow's award out of the fund. (*Hill* v. *Reno,* 112 Ill. 154; *McCartney* v. *Osburn,* 118 id. 403.) And it was error to allow interest on the award. Interest act, sec. 3.

The court ordered the payment out of the fund, of $200 as fees of the solicitor of the defendant in error, complainant below. This was improper. *Kilgour* v. *Crawford,* 51 Ill. 249; *Lilly* v. *Shaw,* 59 id. 72; *Stenger* v. *Edwards,* 70 id. 631; *Cowdrey* v. *Hitchcock,* 103 id. 262.

Mr. JULIUS ROSENTHAL, and Messrs. BARNUM, EVANS & BARNUM, for the defendant in error:

The writ of error should be dismissed, for the reason the same relief is sought by original bill or bill of review. *Buffum* v. *Tilton,* 17 Pick. 510; *Carr* v. *Casey,* 20 Ill. 637; 1 Bacon's Abr. 29, 30.

The partition decree does not deprive plaintiffs in error of their rights of homestead. *Labadie* v. *Hewitt,* 85 Ill. 341.

The value of the widow's homestead was over-estimated, but the mistake is too trifling to call for a reversal. As to the nature and extent of that right, see *Kingman* v. *Higgins,* 100 Ill. 319; *Cowdrey* v. *Carr,* 103 id. 262.

The balance due on the widow's award was properly paid. It was a claim against the estate, and drew interest. *Wheeler* v. *Dawson,* 63 Ill. 57.

Solicitor's fees were allowable. Partition act, sec. 40; *Howey* v. *Goings,* 13 Ill. 95.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

The statute requires that in a proceeding for the partition of real estate, the court shall "ascertain and declare the rights, titles and interests of all the parties," and give judgment according to the rights of the parties. In this case, the court found that complainant was entitled to a one-tenth interest in the premises sought to be partitioned, as tenant in common with plaintiffs in error, each of whom was found to be entitled to an undivided three-tenths thereof, subject to the life estate of complainant in one-third of said premises, and to her right of homestead in the whole thereof, of the value of $1000, and to the payment of the unpaid balance of her widow's award, amounting to $1203.70, and decreed partition accordingly, "subject, first, to the payment to said Maria Stunz, of the said value of her homestead, and of the value of one-third of the income of said estate as bequeathed to her, and to the sum allowed by said probate court, to-wit, $1203.70." On the report of the commissioners that the premises were not susceptible of division, and were worth $5125, and its confirmation, the court ordered a sale by the master, and, in case his report of sale be confirmed, directing him "to assess the value of the homestead, the dower interest and unpaid balance of the widow's award," as found by the court, together with all costs and charges of the proceeding, to deduct and pay the same out of the proceeds of said sale, and to execute to the purchaser proper deeds of conveyance. Various objections are made to this decree, a part only of which will be noticed.

The decree finds that the widow is entitled to dower, and to homestead of the value of $1000. The will, under which all parties claim, gives the widow one-third of the net income of the testator's real estate, which consisted of the lot in question, for her natural life, and the right to live on the homestead, but not to the exclusion of his children, until she should again marry. Whatever right, therefore, the widow has in the

real estate is derived from the will, alone. (*Cowdrey* v. *Hitch-cock*, 103 Ill. 272.) She had the right to renounce the will at any time within a year after the issue of letters testamentary, and take under the statute; but this it appears she did not do. There being a devise of an interest in the real estate,—that is, of one-third of the net income derived therefrom, during her life,—and the right to the homestead during her widowhood, and she having failed to renounce, but elected to take under the will, she has no dower or homestead under the statute. The general rule is, that if she take under the will she is bound by the provision made for her therein. The statute gives a householder having a family, an estate of homestead to the extent in value of $1000, and by section 2, chapter 52, of the Revised Statutes, it is declared that such exemption shall continue after the death of such householder, for the benefit of the husband or wife surviving, so long as he or she continues to occupy such homestead, and of the children until the youngest child arrives at the age of twenty-one years.

Thus it will be seen that the statute gives an estate of homestead to the householder for life, and also to the surviving husband or wife for life, if he or she continues to occupy the same. The will does not create an estate for life absolutely in the wife. The provision of the will is: "My said wife shall enjoy the right to live on my homestead, but not to the exclusion of my children, until she shall marry again." We do not deem it important to determine the exact interest which the wife would take under that clause of the will. At most it could be only the right to enjoy the homestead, in common with the children, during her widowhood. The statutory right of homestead terminates with the death of the wife, or her abandonment, only. The statute gives the estate to the wife and the children, to be enjoyed for their joint use and benefit until the youngest child becomes of the age of twenty-one years. The widow, under the will, has only a privilege to live on the property until she shall marry again. The provision made by the

will is inconsistent with the homestead estate given by law, and she, having elected to take under the will, can not claim inconsistent rights of homestead given by the statute. *Van-Sant* v. *VanSant,* 23 Ill. 536; *Hitchcock* v. *Cowdrey,* 103 id. 262.

From what has been said, it is seen that the widow took no right of homestead, in the sense of that term as given by the statute. It follows, we are of opinion that the court erred in holding that she was entitled to a homestead in said premises of the value of $1000. Her right was not limited by its amount or value. It appears from the appraisement returned by the commissioners, that the premises were of the value of $5125, and yet, subject to the right of the children, the right given by the will was to live upon and enjoy the same regardless of its value.

Again, the decree fails to find that the children of the testator had any rights in the homestead estate. This was also erroneous. The will gave them nothing in lieu of their estate of homestead, and, under the statute, they had a homestead right until the youngest arrived at the age of twenty-one years. The testator, by declaring that the widow should not enjoy the homestead to the exclusion of the children, if it could be held that he did not thereby interfere with the right of homestead of the widow, did nothing to defeat the statutory right of his minor children to the estate of homestead. But if this, upon further consideration, should be found to be incorrect, and the widow had a statutory right of homestead, dependent upon no contingency save that of occupancy, the decree of the court was erroneous in giving her $1000 of the proceeds of the sale of the property. (*Merritt* v. *Merritt,* 97 Ill. 243.) In that case it was held, that under section 34 of the Partition act, either "the value of her right of homestead must be ascertained according to the usual mode of determining the values of life estates in similar cases, or the $1000 must be invested and the proceeds thereof paid over to her during her life, leav-

ing the principal for the heirs at her death." And such has been the uniform holding of this court.

The court also allowed the widow six per cent on the balance of her award, and this, in our opinion, is error. Such award is not a judgment, within the meaning of section 3 of the statute relating to interest. The judgment there mentioned is a money judgment. The 74th section, relating to administration, gives the widow as her award specific articles of personal property, which are required to be appraised, etc., but she has the right to elect to take money in lieu thereof to the amount of such award. We are of opinion that this is a mere allowance and award, and while, for some purposes, it may be treated as a judgment, it lacks the essential characteristics of one. Certain it is that no interest on the award should be allowed before her election to take the same in money.

The court ordered a solicitor's fee of $200 to be paid out of the proceeds of the sale, thereby in effect making the heirs pay nine-tenths thereof, when in fact they received but a small portion of the proceeds of the sale. They received an amount aggregating $1350.45 only, out of the proceeds of a sale amounting to $5100. But in addition to this, it is patent upon the face of the record that the entire proceeding was conducted with unfairness toward the wards and in the interest of the widow. The proceeding, as conducted, was not an amicable suit instituted for the benefit of the wards, but was hostile to their interests. Such fees may be allowed when the suit is an amicable one, for the reason that therein the solicitors represent the interests of all the parties alike. It would be grossly unjust to compel these children to pay the fees of the solicitor of the widow, who alone represented her interest, and who so conducted the proceeding as to produce the unconscionable result already indicated. We can discover no indications that the solicitor represented the interests of plaintiffs in error in this proceeding. In *Lilly* v. *Shaw*, 59 Ill. 72, this court said, "that the services of the widow's solicitor were

evidently bestowed with great zeal, ability and effect against plaintiffs in error, and it was unreasonable and inequitable that they should be made to pay for them." As much, at least, may be very properly said in this case, and we think it was error for the court to allow such fee against the plaintiffs in error.

It also appears that a guardian *ad litem* was appointed by the court to defend and protect the interests of the infant defendants. It is apparent that the duty required of him by law was entirely disregarded. The statute (Chancery Code, section 6,) authorizes the court to appoint a guardian *ad litem* for infant or insane defendants, and to compel him to act, and provides that "he shall, moreover, be allowed a reasonable sum for his charges as such guardian, to be fixed by the court, and taxed with the bill of costs." It is the duty of the guardian *ad litem*, when appointed, to examine into the case and determine what the rights of his wards are, and what defense their interest demands, and to make such defense as the exercise of care and prudence will dictate. He is not required to make a defense not warranted by law, but should exercise that care and judgment that reasonable and prudent men exercise, and submit to the court, for its determination, all questions that may arise, and take its advice, and act under its direction in the steps necessary to preserve and secure the rights of the minor defendants. The guardian *ad litem* who perfunctorily files an answer for his ward, and then abandons the case, fails to comprehend his duties as an officer of the court. Had the guardian *ad litem* in this case properly discharged the duties of his office, it is not probable that the learned chancellor who heard the cause would have entered this decree. No objection seems to have been interposed at any stage of the case, nor attention called to the grave errors into which the court has fallen. It was his duty to have understood the cause and the rights of the parties, and to have called the attention of the court thereto. While the guardian *ad litem* will not be war-

ranted in interposing useless or vexatious defenses, the law contemplates a defense in fact, so far as necessary to protect the rights and interests of the ward. The failure of the guardian in this regard, while forming of itself no sufficient ground of reversal, was a grave irregularity, and undoubtedly led the court into most, if not all, of the errors found in the decree.

It is objected that the plaintiffs in error have filed a bill to impeach the decree in this case for fraud, etc., and that they therefore can not maintain this writ of error. Defendant in error has, in apt time, entered her motion to dismiss this writ for that reason. Without pausing to question the manner in which this is brought before the court, we do not regard the matters set up in the bill to impeach the decree as being the same involved in this writ of error. The bill introduces matters that do not appear on the face of this record. It seeks relief on the ground of fraud, in that the defendant in error had entered into a fraudulent combination and agreement with the guardian *ad litem,* in pursuance of which the rights and interests of plaintiffs in error were sacrificed, and a like combination with the commissioners, whereby they were induced to value the property at substantially one-half of its real value. It also appears that there is a party to that bill, necessarily, who is not a party here, and can not be. So that neither the parties nor the subject matter in litigation can be said to be identical. Even if the pendency of the bill to impeach the decree can be properly brought before the court otherwise than by plea, we think the motion to dismiss must be overruled.

For the foregoing reasons, the decree of partition and the subsequent orders made in the cause are reversed, and the cause is remanded for further proceedings.

*Decree reversed.*