# Illinois Official Reports

## Supreme Court

---

### *Nichols v. Fahrenkamp*, 2019 IL 123990

---

| | |
|---|---|
| Caption in Supreme Court: | ALEXIS NICHOLS, f/k/a Alexis Brueggeman, Appellee, v. DAVID FAHRENKAMP *et al.*, Appellants. |
| Docket No. | 123990 |
| Filed<br>Rehearing denied | June 20, 2019<br>September 23, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Madison County, the Hon. Barbara L. Crowder, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | David L. Antognoli and Kevin P. Green, of Goldenberg Heller & Antognoli, P.C., of Edwardsville, for appellants.<br><br>Roy C. Dripps, Charles W. Armbruster III, and Michael T. Blotevogel, of Armbruster, Dripps, Winterscheidt & Blotevogel, LLC, of Maryville, for appellee.<br><br>Leslie J. Rosen, of Leslie J. Rosen Attorney at Law, P.C., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |

Justices        JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Kilbride, Burke, Theis, and Neville concurred in the judgment and opinion.

**OPINION**

¶ 1       This appeal asks whether defendant David Fahrenkamp has quasi-judicial immunity from tort liability for his conduct within the scope of his appointment as guardian *ad litem* for plaintiff Alexis Nichols. We hold that he has such immunity. We reverse the appellate court's decision and affirm the circuit court's grant of summary judgment in defendant's favor.

¶ 2                         BACKGROUND

¶ 3       In 2004 plaintiff Alexis Nichols, formerly known as Alexis Brueggeman, received $600,000 as part of a settlement for injuries she suffered in a motor vehicle accident. Because Nichols was only 11 years old at the time of the settlement, the probate court appointed her mother, Jelanda Miller, as her guardian to administer her estate. Additionally, the court appointed defendant David Fahrenkamp as guardian *ad litem*. The court's order stated only that "[t]he court being fully advised in the premises does hereby appoint David Fahrenkamp as Guardian Ad Litem for the minor child, ALEXIS BRUEGGEMAN."

¶ 4       In 2012 Nichols sued her mother, claiming that she used $79,507 of settlement funds for her own benefit rather than for Nichols's. The trial court ruled in Nichols's favor but limited recovery to $16,365, a 2007 Jeep Compass, and $10,000 in attorney fees. The court found that Nichols's mother was not liable for the entire $79,507 when Nichols had a "guardian ad litem who approved the estimates and expenditures."

¶ 5       Next Nichols initiated this lawsuit against defendant David Fahrenkamp and his law office, alleging that Fahrenkamp committed legal malpractice when he approved expenditures that were not in Nichols's interests. Nichols alleged that Fahrenkamp acted negligently by failing to adequately monitor and audit her mother's requested expenditures and in failing to report any irregularities to the court. She also claimed that throughout his time as guardian *ad litem* Fahrenkamp never met with her, consulted with her regarding her mother's expenditures, or even informed her that he had been appointed as her guardian *ad litem*.

¶ 6       First in his motion to dismiss and later in his motion for summary judgment, Fahrenkamp contested these factual allegations. He claimed that he gave Nichols his business card when he was first appointed and that he met with her on three separate occasions during his appointment. Apart from his factual claims, Fahrenkamp also asserted that guardians *ad litem* have quasi-judicial immunity so he was not liable for any negligence during his appointment.

¶ 7       The circuit court of Madison County denied Fahrenkamp's motion to dismiss but granted his motion for summary judgment. After noting that no Illinois case has specifically held that guardians *ad litem* have quasi-judicial immunity, the circuit court surveyed cases that involved other roles with similar responsibilities. *Vlastelica v. Brend*, 2011 IL App (1st) 102587, and *Cooney v. Rossiter*, 583 F.3d 967 (7th Cir. 2009), held that child representatives have

immunity, and *Heisterkamp v. Pacheco*, 2016 IL App (2d) 150229, extended immunity to a court-appointed expert who assisted in a custody evaluation. Based on these cases, the circuit court determined that if Fahrenkamp acted according to the appointing court's directions then he was immune from liability. Because the order appointing Fahrenkamp did not specify additional responsibilities, Fahrenkamp had the limited role of providing recommendations to the court regarding Nichols's best interests. The circuit court concluded that he was immune from liability for his conduct in this capacity, so it granted summary judgment in Fahrenkamp's favor.

¶ 8        The appellate court reversed the circuit court's summary judgment order. 2018 IL App (5th) 160316. In *Stunz v. Stunz*, 131 Ill. 210, 221 (1890), this court described the "duty of the guardian *ad litem*, when appointed, to examine into the case and determine what the rights of his wards are, and what defense their interest demands, and to make such defense as the exercise of care and prudence will dictate." Based on *Stunz*, the appellate court concluded that guardians *ad litem* have a duty to protect their wards' assets and interests. The court determined that defendant Fahrenkamp had "a duty to act as an advocate on behalf of plaintiff." 2018 IL App (5th) 160316, ¶ 14. It added that immunizing guardians *ad litem* from tort suits would be inconsistent with this duty.

¶ 9        The appellate court also rejected Fahrenkamp's reliance on *Vlastelica*, 2011 IL App (1st) 102587. The appellate court distinguished *Vlastelica* because that dissolution of marriage case involved opposing parties who might sue or otherwise harass a guardian *ad litem* out of frustration with the results of the proceedings. *Id.* ¶ 16. The underlying lawsuit here, however, involved the distribution of assets and only one party. The appellate court characterized the relationship between this guardian *ad litem* and ward as "equivalent to the relationship between a trustee and a beneficiary." *Id.* It found that, outside the antagonistic context created by litigating parents, guardians *ad litem* do not need protection from unwarranted harassment and do not require quasi-judicial immunity. *Id.* ¶¶ 16, 18.

¶ 10        Justice Goldenhersh dissented. Relying heavily on *Vlastelica*, the dissent agreed with Fahrenkamp that guardians *ad litem* do not serve as advocates for their wards but act as agents of the court. *Id.* ¶ 25 (Goldenhersh, J., dissenting) (citing *Vlastelica*, 2011 IL App (1st) 102587, ¶¶ 21-23). Because they are "arms of the court," the dissent would find that guardians *ad litem* are entitled to quasi-judicial immunity. *Id.* The dissent also expressed concern that denying guardians *ad litem* immunity would discourage attorneys from accepting appointments as guardians *ad litem*. *Id.*

¶ 11        Fahrenkamp petitioned this court for leave to appeal, and we allowed that petition. Ill. S. Ct. R. 315 (eff. July 1, 2018).

¶ 12                                ANALYSIS

¶ 13        The appellate court reversed the circuit court's order awarding summary judgment in Fahrenkamp's favor. Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). This court reviews a summary judgment order *de novo*. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). In reviewing the motion, "this court

will construe the record strictly against the movant and liberally in favor of the nonmoving party." *Id.*

¶ 14 The only question on appeal is whether quasi-judicial immunity protects David Fahrenkamp from civil liability for his conduct within the scope of his appointment as Alexis Nichols's guardian *ad litem*. Quasi-judicial immunity originates in the common-law principle that judges are immune from liability for the acts they perform as part of their judicial duties. See, *e.g.*, *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) (explaining that "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in *Bradley v. Fisher*, 13 Wall. 335 (1872)"); *In re Mason*, 33 Ill. 2d 53, 57 (1965); *In re McGarry*, 380 Ill. 359, 365-66 (1942); *People ex rel. Chicago Bar Ass'n v. Standidge*, 333 Ill. 361, 367 (1928).

¶ 15 This common-law immunity extends beyond the judges themselves to protect other actors in the judicial process. *Rehberg v. Paulk*, 566 U.S. 356, 366-67 (2012); *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983) (finding that trial witnesses have immunity for their testimony because "the common law provided absolute immunity from subsequent damages liability for all persons—governmental or otherwise—who were integral parts of the judicial process"); *Butz v. Economou*, 438 U.S. 478, 513 (1978) (holding that federal administrative law judges have absolute immunity). In *Cleavinger v. Saxner*, 474 U.S. 193 (1985), the United States Supreme Court applied the "functional test" to determine whether an actor's role is sufficiently connected to the judicial process to merit this absolute immunity. That test considers

> "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Id.* at 202 (citing *Butz*, 438 U.S. at 512).

¶ 16 The "functional test" requires the court to look past the title attached to an office or position and look to that position holder's role. Fahrenkamp did not either receive or forfeit immunity simply by acquiring the title "guardian *ad litem*," especially because American authorities have not always used this phrase consistently. See, *e.g.*, *Fox v. Willis*, 890 A.2d 726, 732 (Md. 2006) (observing that "there is little uniformity in the case law and statutes of other states with regard to the functions, duties, and immunities of 'guardians *ad litem*' "). Rather than looking at the title "guardian *ad litem*" to determine whether Fahrenkamp has quasi-judicial immunity, the court must consider what function he performed. Here, however, the parties do not agree what that function was.

¶ 17 Fahrenkamp characterizes the guardian *ad litem*'s function based on the statutory regime created by the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West 2016)). The Marriage Act provides three separate mechanisms for ensuring that courts adequately consider the interests of minors: a child's attorney, a child representative, and a guardian *ad litem*. *Id.* It describes those options as follows:

> "(1) Attorney. The attorney shall provide independent legal counsel for the child and shall owe the same duties of undivided loyalty, confidentiality, and competent representation as are due an adult client.

- 4 -

(2) Guardian ad litem. The guardian ad litem shall testify or submit a written report to the court regarding his or her recommendations in accordance with the best interest of the child. The report shall be made available to all parties. The guardian ad litem may be called as a witness for purposes of cross-examination regarding the guardian ad litem's report or recommendations. The guardian ad litem shall investigate the facts of the case and interview the child and the parties.

(3) Child representative. The child representative shall advocate what the child representative finds to be in the best interests of the child after reviewing the facts and circumstances of the case. The child representative shall meet with the child and the parties, investigate the facts of the case, and encourage settlement and the use of alternative forms of dispute resolution. The child representative shall have the same authority and obligation to participate in the litigation as does an attorney for a party and shall possess all the powers of investigation as does a guardian ad litem. The child representative shall consider, but not be bound by, the expressed wishes of the child. A child representative shall have received training in child advocacy or shall possess such experience as determined to be equivalent to such training by the chief judge of the circuit where the child representative has been appointed. The child representative shall not disclose confidential communications made by the child, except as required by law or by the Rules of Professional Conduct. The child representative shall not render an opinion, recommendation, or report to the court and shall not be called as a witness, but shall offer evidence-based legal arguments. The child representative shall disclose the position as to what the child representative intends to advocate in a pre-trial memorandum that shall be served upon all counsel of record prior to the trial. The position disclosed in the pre-trial memorandum shall not be considered evidence. The court and the parties may consider the position of the child representative for purposes of a settlement conference." *Id.* § 506(a).

Of these three options, a child's attorney is least associated with the judicial process. The child's attorney is "independent" and owes the child client "undivided loyalty." Next is the child representative, who acts as an "advocate" for the child's best interests. Like the child's attorney, the child's representative "shall have the same authority and obligation to participate in the litigation as does an attorney for a party." Also like a traditional attorney, the child representative "shall not render an opinion, recommendation, or report to the court and shall not be called as a witness, but shall offer evidence-based legal arguments." However, the child representative "shall possess all the powers of investigation as does a guardian ad litem" and is not bound by the child's expressed wishes when determining the child's best interests. The role of child representative is "a hybrid of a child's attorney [(750 ILCS 5/506(a)(1))] and a child's guardian ad litem." *Cooney*, 583 F.3d at 969.

¶ 18 Among these three positions, guardian *ad litem* is the most associated with the judicial process. The guardian *ad litem* provides the court with a report on the child's best interests. That report is available to all parties, and the guardian *ad litem* may testify as a witness. These responsibilities clearly indicate that a guardian *ad litem* under the Marriage Act is not an "advocate" in the manner of either the child's attorney or a child representative.

¶ 19 Fahrenkamp contends that he filled the role of a guardian *ad litem* as it is described in the Marriage Act. Although he concedes that he was not appointed under the Marriage Act,

Fahrenkamp claims that the court that appointed him relied on its inherent authority. In *In re Mark W.*, 228 Ill. 2d 365, 375 (2008), this court concluded that a circuit court had the inherent authority to appoint a guardian *ad litem* to report on the best interests of a mentally disabled parent. *In re Mark W.* described the guardian *ad litem*'s role as the " 'eyes and ears of the court' and not as the ward's attorney." *Id.* at 374 (quoting *In re Guardianship of Mabry*, 281 Ill. App. 3d 76, 88 (1996)). Fahrenkamp argues that his appointment here relied on this authority and that a guardian *ad litem* appointed pursuant to *In re Mark W.* fulfills a similar function to a guardian *ad litem* under the Marriage Act.

¶ 20    Nichols provides a competing characterization of the guardian *ad litem*'s function. She urges the court to ignore the Marriage Act's framework because this case does not involve any dissolution of marriage or custody dispute. Instead, the case from which this lawsuit stems involved the distribution of a minor's assets. Nichols claims that Fahrenkamp was appointed under article XI of the Probate Act of 1975 (Probate Act) (755 ILCS 5/art. XI (West 2016)). Section 11-10.1(b) of the Probate Act provides that "[i]n any proceeding for the appointment of a standby guardian or a guardian the court may appoint a guardian ad litem to represent the minor in the proceeding." *Id.* § 11-10.1(b). Additionally, section 27-3 states that a "guardian ad litem appointed under this Act shall file an answer, appear and defend on behalf of the ward or person not in being whom he represents." *Id.* § 27-3.

¶ 21    Like the appellate court, Nichols claims that Fahrenkamp's role as guardian *ad litem* was to serve as her "advocate." 2018 IL App (5th) 160316, ¶ 14. She relies on this court's decision in *Stunz*, 131 Ill. 210. In that case a widow had sought to partition land that was part of her deceased husband's estate. The husband's minor children from a previous marriage lived on that land, and the court had appointed a guardian *ad litem* to represent them in the partition proceedings. Initially the widow succeeded in selling the land, but later the minor children appealed and accused her of fraud. *Id.* at 211-15.

¶ 22    During the subsequent court proceedings, this court determined that the minors' guardian *ad litem* had abandoned his responsibilities to the children. The court explained:

> "It is the duty of the guardian *ad litem*, when appointed, to examine into the case, and determine what the rights of his wards are, and what defense their interest demands, and to make such defense as the exercise of care and prudence will dictate. He is not required to make a defense not warranted by law, but should exercise that care and judgment that reasonable and prudent men exercise, and submit to the court for its determination all questions that may arise, and take its advice and act under its direction in the steps necessary to preserve and secure the rights of the minor defendants. The guardian *ad litem* who perfunctorily files an answer for his ward, and then abandons the case, fails to comprehend his duties as an officer of the court." *Id.* at 221-22.

The guardian *ad litem* in *Stunz* failed to fulfill his obligation to mount a legal defense of the ward's interests. *Id.* at 222. Nichols urges us to apply the same standard to Fahrenkamp.

¶ 23    Nichols also relies on an out-of-state case—*Simpson v. Doggett*, 156 S.E. 771 (S.C. 1930). There the Supreme Court of South Carolina provided a similar account of the guardian *ad litem*. The South Carolina court described the guardian *ad litem*'s "duty fully to protect the infant's interests in all matters relating to the litigation." *Id.* at 773. Moreover, *Simpson* explicitly stated that a guardian *ad litem* "may be punished for his neglect as well as made to respond to the infant for the damage sustained." *Id.*

¶ 24    Throughout the past 40 years, the duties of the guardian *ad litem* in Illinois have evolved. At the time of *Stunz* (1890), this court first described the guardian *ad litem*'s duty to raise a legal defense of the ward's interest. When the General Assembly enacted the Probate Act and passed section 11-10.1 of the Probate Act in 1979, it had a similar view of guardians *ad litem*. The Probate Act provided for the appointment of a guardian *ad litem* to "represent" the minor (755 ILCS 5/11-10.1(b) (West 2016) (added by Pub. Act 80-1415 (eff. Jan. 1, 1979))) and to "file an answer, appear and defend on behalf of the ward" (*id.* § 27-3 (added by Pub. Act 79-328 (eff. Jan. 1, 1976))).

¶ 25    In early cases under the Probate Act of 1975, guardians *ad litem* acted much like traditional attorneys. For example, *In re Estate of Cohn*, 95 Ill. App. 3d 204, 206 (1981), involved a petition for guardianship under the Probate Act. The court appointed a guardian *ad litem* whose law office provided the minor with legal representation before both the trial and appellate courts. *Id.* The guardian *ad litem* in *Roth v. Roth*, 52 Ill. App. 3d 220, 227 (1977), also acted as an "advocate" for two children by delivering a closing argument and filing an appeal on the children's behalf.

¶ 26    Similarly, *In re Estates of Azevedo*, 115 Ill. App. 3d 260, 262 (1983), involved a dispute concerning legal fees for an attorney who, in different court proceedings, acted both as a minor's attorney under the then-existing version of the Marriage Act and as the child's guardian *ad litem* under the Probate Act. In 1981, when those proceedings began, section 506 of the Marriage Act did not contain the three-part division of roles that it does now. Instead it provided:

> " 'Representation of Child. The court may appoint an attorney to represent the interests of a minor or dependent child with respect to his support, custody and visitation. The court may also appoint such attorney to serve as the child's guardian-ad-litem. The court shall enter an order for costs, fees and disbursements in favor of the child's attorney and guardian-ad-litem, as the case may be. The order shall be made *against either or both parents*, or against the child's separate estate.' " (Emphasis in original.) *Id.* at 263 (quoting Ill. Rev. Stat. 1981, ch. 40, ¶ 506).

The decision in *In re Estates of Azevedo* does not even hint that any conflict of interest arose from an individual contemporaneously acting as both attorney and guardian *ad litem*, because at the time these roles were largely coextensive. Instead the appeal concerned which statutory regime governed who paid the attorney fees. See also *Layton v. Miller*, 25 Ill. App. 3d 834, 839 (1975) (explaining that "clearly a guardian ad litem should be appointed to represent the minors, and no reason appears why it could not be the same attorney who was originally appointed as guardian of their estate. However, the court should be careful that there be no conflicting interests between the minors and the person representing them.").

¶ 27    A law review article from 1977—Donald C. Schiller, *Child Custody: Evolution of Current Criteria*, 26 DePaul L. Rev. 241 (1977)—described how courts at the time utilized guardians *ad litem* to determine children's best interests. Schiller explained that as of 1977 "the guardian ad litem ha[d] no power greater than any other lawyer involved in the litigation" and that the guardian *ad litem* could "employ the same tools of litigation available to the primary parties in the case." *Id.* at 253-54. Those "tools" included depositions, document requests, calling and examining witnesses, and cross-examining other parties' witnesses. *Id.* at 254.

- 7 -

¶ 28		Schiller also described the then-existing "controversy over whether the guardian ad litem should make a written report, and if he does, whether the court should be permitted to read and consider it." *Id.* According to Schiller, Illinois courts had not addressed this question as of 1977. *Id.* He approved of the growing "movement" among states that had passed new legislation concerning these issues. Those statutes provided minors with attorneys who were not called "guardians *ad litem*," but they also allowed investigators to file reports with the court. *Id.* at 255-57.

¶ 29		Although in 1979 article XI of the Probate Act and the Marriage Act shared the *Stunz* view of guardians *ad litem*, the General Assembly has amended section 506 of the Marriage Act multiple times. In 2000 the General Assembly passed Public Act 91-410, § 5 (eff. Jan. 1, 2000). This bill amended section 506 of the Marriage Act and established the tripartite division between attorneys, child representatives, and guardians *ad litem*. That 2000 version of the statute allowed the court to appoint a "guardian ad litem to address issues the court delineates." 750 ILCS 5/506(a)(2) (West 2000). In 2006, Public Act 94-640, § 5 (eff. Jan. 1, 2006) clarified the guardian *ad litem*'s role to "testify or submit a written report." Now that section draws a clear distinction between guardians *ad litem* and children's attorneys, with child representatives occupying a middle ground. 750 ILCS 5/506 (West 2016).

¶ 30		While the meaning of "guardian *ad litem*" in the Marriage Act has changed, article XI of the Probate Act has maintained its 1979 framework. The text of section 11-10.1(b) has remained largely unchanged since it took effect in 1979. See Pub. Act 80-1415 (eff. Jan. 1, 1979). Likewise, the General Assembly has not amended section 27-3 since it passed that statute in 1975 (see Pub. Act 79-328 (eff. Jan. 1, 1976), and that section directly copied a section of the earlier Probate Act from 1939 (see Ill. Rev. Stat. 1939, ch. 3, ¶ 338). As Nichols correctly points out, the text of article XI of the Probate Act continues to allow a court to appoint a "guardian ad litem" to "represent" a minor. See 755 ILCS 5/11-10.1(b) (West 2016); *Id.* § 27-3.

¶ 31		Notably, the General Assembly has amended other sections of the Probate Act to reflect the newer usage of the phrase "guardian *ad litem*." Article XIa of the Probate Act—not to be confused with article XI—governs the appointment of guardians for adults with intellectual disabilities. Prior to 1995, section 11a-10 of the Probate Act allowed a court to appoint a guardian *ad litem* "to *represent* the respondent," just as section 11-10.1 currently provides for guardianship proceedings involving minors. (Emphasis added.) 755 ILCS 5/11a-10(a) (West 1994). However, in 1995 the General Assembly updated article XIa of the Probate Act to reflect the more common use of "guardian *ad litem*." Pub. Act 89-396, § 15 (eff. Aug. 20, 1995). After the 1995 amendment, section 11a-10(a) allowed the court to appoint a guardian *ad litem* "to report to the court concerning the respondent's best interests consistent with the provisions of this Section." 755 ILCS 5/11a-10(a) (West 1996); Pub. Act 89-396, § 15 (eff. Aug. 20, 1995); see also *In re Guardianship of Mabry*, 281 Ill. App. 3d at 88.

¶ 32		Although the General Assembly has brought section 506 of the Marriage Act and section 11a-10 of the Probate Act into conformity, it has not done the same for section 11-10.1 of the Probate Act. As a result of this incongruity between different statutory regimes, in recent years Illinois courts have appointed guardians *ad litem* to report on children's best interests, as described by the Marriage Act, even in proceedings under article XI of the Probate Act. For example, in *In re Estate of M.J.E.*, 2016 IL App (2d) 160457-U, a child's grandparents sought

to be appointed the child's guardians under the Probate Act (755 ILCS 5/11-8 (West 2014)). The appellate court explicitly noted that the circuit court appointed the guardian *ad litem* "to interview the child and make a report." *In re Estate of M.J.E.*, 2016 IL App (2d) 160457-U, ¶ 15. Similarly in *In re Estate of Cadle*, 2014 IL App (1st) 131700-U, ¶ 14, a child's father moved to terminate an order appointing the child's aunt as his guardian under the Probate Act. In recounting the facts of the case, the appellate court summarized the guardian *ad litem*'s "report" that "recommended" the court find that the aunt's guardianship served the child's best interests. *Id.* ¶¶ 10, 14.

¶ 33     Because the texts of the Marriage Act and article XI of the Probate Act do not use the term "guardian *ad litem*" in the same way, that title does not dictate what Fahrenkamp's role was as guardian *ad litem* in this case. This problem is particularly acute in this case because the version of the Marriage Act in effect when Fahrenkamp was appointed provided only that the court may appoint a "guardian ad litem to address issues as the court delineates." 750 ILCS 5/506(a)(2) (West 2016).

¶ 34     Nor does the court's order in this case specify how it intended Fahrenkamp to act. The court's order states only that "[t]he court being fully advised in the premises does hereby appoint David Fahrenkamp as Guardian Ad Litem for the minor child, ALEXIS BRUEGGEMAN."

¶ 35     Nevertheless, we may still conclude that Fahrenkamp's role in this case corresponded to a guardian *ad litem* under the current version of the Marriage Act and *In re Mark W.* Most Illinois cases in the twenty-first century that involve a guardian *ad litem* treat that guardian *ad litem* as a reporter or a witness and not as an advocate. See, *e.g.*, *In re Mark W.*, 228 Ill. 2d at 374 (citing *In re Guardianship of Mabry*, 281 Ill. App. 3d at 88); *In re Estate of M.J.E.*, 2016 IL App (2d) 160457-U; *In re Estate of Cadle*, 2014 IL App (1st) 131700-U. In contrast, cases in which a guardian *ad litem* "represent[ed]" a ward as an advocate date to earlier in Illinois's history. 755 ILCS 5/11-10.1 (West 2016); *In re Estates of Azevedo*, 115 Ill. App. 3d 260; *In re Estate of Cohn*, 95 Ill. App. 3d 204; *Roth*, 52 Ill. App. 3d 220; see also *Rom v. Gephart*, 30 Ill. App. 2d 199, 208 (1961). The more recent cases provide a more fitting context for viewing the court's order here than outdated cases like *In re Estates of Azevedo* or *Gephart*.

¶ 36     The cases on which the parties rely support our conclusion. Nichols relies on *Stunz* and *Simpson*. *Simpson* is an almost 90-year-old case from South Carolina that even that state's supreme court undermined in *Fleming v. Asbill*, 483 S.E.2d 751, 756 (S.C. 1997). In holding that guardians *ad litem* in custody disputes have quasi-judicial immunity, *Fleming* described how guardians *ad litem* in South Carolina had changed throughout the twentieth century. As in the above discussion of Illinois law, the South Carolina court explained that

> "[t]he role of guardians ad litem in the 1990's is not the same as the role they played in the 1920's. Their role has changed significantly in recent decades. Whereas in the past, the guardian ad litem served in almost a trustee-like capacity, seeking to specifically advocate the pecuniary interests of the ward, a present-day guardian ad litem in a private custody dispute functions as a representative of the court appointed to assist it in protecting the best interests of the ward." *Fleming*, 483 S.E.2d at 754.

¶ 37     Although it is an Illinois case, *Stunz*, 131 Ill. 210, is an infrequently cited case from the nineteenth century. At that time the phrase "guardian *ad litem*" applied to an attorney who filed an answer on behalf of a minor, determined the ward's rights, and made legal arguments on

that ward's behalf. *Id.* at 221. In the nearly 130 years since this court decided *Stunz*, however, another use of the phrase "guardian *ad litem*" has developed.

¶ 38 Fahrenkamp rightly relies on this court's description of the guardian *ad litem* in the 2008 case *In re Mark W.*, 228 Ill. 2d at 374. In *In re Mark W.* we explained that "[t]he traditional role of the guardian *ad litem* is not to advocate for what the ward wants but, instead, to make a recommendation to the court as to what is in the ward's best interests." *Id.* This is entirely consistent with the function of a guardian *ad litem* under the current Marriage Act as an investigator and a "witness" and with the circuit court's order in this case. 750 ILCS 5/506(a)(2) (West 2016). Fahrenkamp's involvement in this case was limited to reviewing Nichols's mother's requests for disbursements of funds and reporting to the court whether he approved or disapproved of each disbursement. Therefore his role as guardian *ad litem* corresponded to the use of that phrase in the Marriage Act and *In re Mark W.*

¶ 39 Nichols insists that the circuit court would not have relied on the Marriage Act or *In re Mark W.* because this was not a dissolution of marriage case. She contends that the circuit court must have intended Fahrenkamp to fill the role of a guardian *ad litem* under article XI of the Probate Act because article XI is the section of the Probate Act regarding minors and this was a probate case involving a minor.

¶ 40 However, this was not a proceeding for the appointment of a guardian. Section 11-10.1 of the Probate Act does not state that it applies to every proceeding involving a minor's property rights. Instead it provides that "[i]n any proceeding *for the appointment of a standby guardian or a guardian* the court may appoint a guardian ad litem to represent the minor in the proceeding." (Emphasis added.) 755 ILCS 5/11-10.1 (West 2016). This phrase limits the applicability of section 11-10.1.

¶ 41 In contrast, *In re Mark W.* allows the court to appoint a guardian *ad litem* based on its inherent authority, apart from any statutory provision. 228 Ill. 2d at 374. As exemplified by *In re Estate of M.J.E.*, 2016 IL App (2d) 160457-U, and *In re Estate of Cadle*, 2014 IL App (1st) 131700-U, a court may appoint a guardian *ad litem* to report on a ward's best interests, regardless of whether the underlying proceedings involve the Probate Act or not. Therefore, we see no reason to presume that the circuit court relied on section 11-10.1 of the Probate Act when it appointed Fahrenkamp. For these reasons, we find that Fahrenkamp's role was analogous to a guardian *ad litem* under the Marriage Act or *In re Mark W.*

¶ 42 Although no Illinois court has specifically considered whether this position merits quasi-judicial immunity, other state supreme courts have granted immunity to actors who fulfill a comparable function. For example, in *Kimbrell v. Kimbrell*, the Supreme Court of New Mexico applied quasi-judicial immunity to a guardian *ad litem* who served as a " 'best interests attorney' " and made recommendations to the court on the ward's best interests. 2014-NMSC-027, ¶ 10, 331 P.3d 915; see *Fleming*, 483 S.E.2d at 756; *McKay v. Owens*, 937 P.2d 1222, 1231 (Idaho 1997); *Barr v. Day*, 879 P.2d 912 (Wash. 1994) (*en banc*). But accord *Collins v. Tabet*, 806 P.2d 40, 47-48 (N.M. 1991) (concluding that the guardian *ad litem* would be entitled to quasi-judicial immunity if his role was limited to helping the court assess the reasonableness of a medical malpractice settlement but that additional fact-finding was necessary to determine whether that particular guardian *ad litem* acted as an advocate); see also *Briscoe*, 460 U.S. at 335-36 (finding police officers immune from liability for their testimony as witnesses).

¶ 43    Federal appellate courts have also found that guardians *ad litem* are immune when their function is to report to the court on a child's best interests. In *Cooney*, the United States Court of Appeals for the Seventh Circuit held that child representatives under Illinois's Marriage Act have absolute immunity. 583 F.3d 967. In the course of its discussion of child representatives, the Seventh Circuit accepted that guardians *ad litem* also have quasi-judicial immunity. *Id.* at 970.

¶ 44    Partially in reliance on *Cooney*, the Tenth Circuit observed the "widespread recognition" that quasi-judicial immunity protects guardians *ad litem*. *Dahl v. Charles F. Dahl, M.D., P.C. Defined Benefit Pension Trust*, 744 F.3d 623, 630 (10th Cir. 2014). This "widespread recognition" did not involve simply the title "guardian ad litem" but also the guardian *ad litem*'s role as witness and reporter. *Cooney*, 583 F.3d 967; *Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989) (finding immunity because a "GAL typically gathers information, prepares a report and makes a recommendation to the court regarding a custody disposition" ); *Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989) (explaining that, although guardians *ad litem* are not immune when they function as advocates, a "guardian ad litem would be absolutely immune in exercising functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court, not only in status or denomination but in reality"); see also *Hughes v. Long*, 242 F.3d 121, 127 (3d Cir. 2001); *Myers v. Morris*, 810 F.2d 1437, 1466 (8th Cir. 1987), *abrogated on other grounds by Burns v. Reed*, 500 U.S. 478 (1991).

¶ 45    Although the Illinois Appellate Court has not specifically ruled that guardians *ad litem* have immunity, it has held that child representatives are protected. In *Vlastelica*, the court cited *Cooney*'s discussion of the relationship between guardians *ad litem* and child representatives. 2011 IL App (1st) 102587, ¶¶ 21-23 (citing 750 ILCS 5/506(a)(2), (3) (West 2010)). The *Vlastelica* court then applied the *Cleavinger* factors to evaluate the child representative's function and determined that the representative aids the court in determining the child's best interests. *Id.* ¶¶ 24-26 (citing *Golden v. Nadler, Pritikin & Mirabelli, LLC*, No. 05 C 0283, 2005 WL 2897397, at *10 (N.D. Ill. Nov. 1, 2005)). The court concluded that child representatives need judicial immunity to protect them from potentially litigious parents. See also *Davidson v. Gurewitz*, 2015 IL App (2d) 150171 (repeating *Vlastelica*'s holding that child representatives are immune from liability for conduct within the scope of their appointment).

¶ 46    As explained above, the case for finding that the Marriage Act's guardians *ad litem* have quasi-judicial immunity is even stronger than the case for child representatives. Whereas child representatives have some degree of independence from both the child's wishes and the court, the guardian *ad litem* is the " 'eyes and ears of the court.' " *In re Mark W.*, 228 Ill. 2d at 374 (quoting *In re Guardianship of Mabry*, 281 Ill. App. 3d at 88). The court in *Vlastelica* could not conclude that child representatives have immunity unless it also presumed that guardians *ad litem* do as well.[1]

¶ 47    Nichols urges us to reject all these authorities because they involved custody disputes, dissolution of marriage proceedings, or similar contexts in which multiple parties engaged in contested litigation. In contrast, this case involves the distribution of a minor's assets. Nichols

_____

[1]Nothing in this opinion should be construed as holding that child representatives also have quasi-judicial immunity. This issue is not before the court, and we express no opinion on it.

contends that when a case involves only one party, guardians *ad litem* do not face the risk of lawsuits from unsatisfied parents and, therefore, do not need immunity from liability.

¶ 48 The facts of this case clearly demonstrate the flaw in Nichols's claim. According to Nichols, Fahrenkamp's role as guardian *ad litem* required him to accuse her mother of neglecting Nichols's best interests. Because Fahrenkamp did not challenge her mother's expenditures, Nichols accused him of malpractice and filed this lawsuit. Even though the underlying proceeding here did not involve the adversarial process, the stakes were high, and the issues were sensitive ones. Courts appoint guardians *ad litem* in cases "involving the support, custody, visitation, allocation of parental responsibilities, education, parentage, property interest, or general welfare of a minor or dependent child." 750 ILCS 5/506(a) (West 2016). Even without opposing parties, such proceedings are often emotionally fraught and potentially upsetting. Just as in child custody or dissolution proceedings, in probate cases "[e]xperts asked by the court to advise on what disposition will serve the best interests of a child in a custody proceeding need absolute immunity in order to be able to fulfill their obligations 'without the worry of intimidation and harassment from dissatisfied parents.' " *Vlastelica*, 2011 IL App (1st) 102587, ¶ 21 (quoting *Cooney*, 583 F.3d at 970).

¶ 49 Therefore, we hold that guardians *ad litem* who submit recommendations to the court on a child's best interests are protected by quasi-judicial immunity. Additionally, this case demonstrates why it is important for lower courts to make abundantly clear what each person's role is. Courts, attorneys, and other professionals should strive to avert misunderstandings before any issues develop. When a circuit court appoints someone to a position like guardian *ad litem*, it should specify that appointee's role in the order of appointment. Finally, we urge the General Assembly to consider reviewing the Probate Act and Marriage Act to ensure that those statutes use the phrase "guardian *ad litem*" consistently. See 755 ILCS 5/11-10.1(b) (West 2016); *id.* § 27-3; 750 ILCS 5/506 (West 2016); see also 705 ILCS 405/2-17 (West 2016). Reconciling all these provisions would help prevent further confusion.

¶ 50                                    CONCLUSION

¶ 51 The circuit court ruled correctly when it granted summary judgment in Fahrenkamp's favor. We reverse the appellate court's decision and affirm the judgment of the circuit court.

¶ 52 Appellate court judgment reversed.

¶ 53 Circuit court judgment affirmed.