*In re* MARRIAGE OF TROY S., Petitioner-Appellee, and RACHEL S., Respondent-Appellant.

Third District    No. 3—00—0132

Opinion filed February 27, 2001.

Edward R. Jaquays (argued), of Law Offices of Edward R. Jaquays, of Joliet, and August Santoro (argued), of Frankfort, for appellant.

Bruce Falk (argued), of Joliet, for appellee.

PRESIDING JUSTICE HOMER delivered the opinion of the court:
Custody of four-year-old D.S. was awarded to her father Troy. Her mother Rachel appeals, contending that: (1) the trial court erred in limiting Elizabeth Delaney's testimony based upon an assertion of

confidentiality; (2) the trial court erred in excluding the testimony of Rose Gossmeyer; and (3) the custody determination was against the manifest weight of the evidence. After our careful consideration, we reverse in part, affirm in part, and remand for further proceedings.

## FACTS

When Rachel and Troy separated in 1994, they agreed that Rachel would have custody of D.S., Troy would have alternate weekend visitation, and Troy would pay $50 per week in child support. This arrangement worked well until November 1995 when Rachel discontinued Troy's visitation.

According to Rachel, after returning from a visit with Troy in November 1995, D.S. confided that Troy had sexually abused her during a bath. Rachel testified that she took D.S. to see a child psychologist, Dr. Jason Sherman, three days later but D.S. refused to discuss the incident with Dr. Sherman. Rachel further testified that approximately 2½ weeks later, D.S. told her that "when her dad hurt her that blood came out of her pee-pee." Rachel testified that she took D.S. to her family doctor, Dr. Swane, the following day. Dr. Swane found no indication of abuse upon examining D.S.

Rachel's father reported the allegations to the Department of Children and Family Services (DCFS) on the day of D.S.'s appointment with Dr. Swane. A colposcopy performed on D.S. in the course of the investigation disclosed no evidence of abuse.

Troy filed for divorce in 1996. At the custody hearing, Barbara Carlson testified that she had interviewed D.S. in January 1996 as part of the DCFS investigation process. She testified that D.S. told her in detail about the alleged sexual abuse and that she believed D.S.'s account. The court, however, ruled that Carlson could testify only as an occurrence witness and therefore barred her from testifying as an expert witness.

Rachel's attorney also sought to qualify Elizabeth Delaney, a therapist, as an expert witness. D.S. received counseling from Delaney from October 1997 through June 1998. Both Troy and the *guardian ad litem* objected to having Delaney testify as an expert witness, arguing that information regarding D.S.'s treatment was privileged. The trial judge sustained the objection. Rachel was permitted to make an offer of proof as to Delaney's qualifications but was prohibited from making an offer of proof as to what Delaney would testify to if testifying as an expert. Delaney was permitted to testify only as an occurrence witness.

Delaney testified that D.S. had described the alleged abuse to her and that she had recommended to Rachel that visitation with Troy

should be suspended. Delaney was not permitted to testify as to why she made that recommendation. The court ruled that the reasons for Delaney's recommendation were a part of D.S.'s treatment and were therefore privileged and inadmissible.

Rachel additionally called Rose Gossmeyer, a DCFS investigator who had attended the January 1996 interview. An offer of proof was made *in camera* after which the court ruled that, because Gossmeyer would merely be testifying regarding the same interview described by Carlson, the policy of confidentiality outweighed the probative value of the testimony.

At the conclusion of the hearing, the trial judge noted that she did not believe Troy had abused D.S. and thus found Rachel was not justified in denying Troy visitation. Consequently, the trial judge awarded custody to Troy. Rachel appeals.

## ANALYSIS

### 1. Privilege—Delaney

Rachel first complains that the trial judge erred in prohibiting Delaney from testifying as an expert based upon an assertion of confidentiality. The trial judge indicated and Troy contends that, since custody was yet to be determined, consent from both Troy and Rachel was required for disclosure.

Rachel argues that the judge misinterpreted the privilege provisions in section 16 of the Clinical Social Worker and Social Work Practice Act (225 ILCS 20/16 (West 1998)). However, when the privilege was raised at trial, Rachel's attorney indicated that this act should not be applied because Delaney would not be testifying in her capacity as a clinical social worker but rather as a licensed psychotherapist. Consequently, the relevant privilege of confidentiality is contained in the Mental Health and Developmental Disabilities Confidentiality Act (Mental Health Act) (740 ILCS 110/1 *et seq.* (West 1998)). Statutory construction is a question of law which we review *de novo. In re Marriage of Lubbs*, 313 Ill. App. 3d 968, 969, 730 N.E.2d 1139, 1141 (2000).

Section 3 of the Mental Health Act provides that "[a]ll records and communications shall be confidential and shall not be disclosed except as provided in this Act." 740 ILCS 110/3 (West 1998). Section 5 provides that "records and communications may be disclosed *** with the written consent of those persons who are entitled to inspect and copy a recipient's records pursuant to Section 4." 740 ILCS 110/5 (West 1998). Section 4(a) provides that "*the parent* or guardian of a recipient who is under 12 years of age" is entitled to inspect and copy records. (Emphasis added.) 740 ILCS 110/4(a) (West 1998).

The appellate court has held that, under section 4(a) of the

Mental Health Act, the written consent of only one parent is necessary for disclosure in a custody proceeding. *In re Marriage of Markey*, 223 Ill. App. 3d 1055, 1059, 586 N.E.2d 350, 352 (1991); *In re Marriage of Kerman*, 253 Ill. App. 3d 492, 497, 624 N.E.2d 870, 874 (1993). Furthermore, the plain language of the statute indicates that the consent of only one parent is sufficient to permit disclosure under the Mental Health Act. See 740 ILCS 110/4(a), 5 (West 1998). We therefore hold that the trial court erred in limiting Delaney's testimony on the grounds of confidentiality. Because Rachel was not permitted to make an offer of proof relative to Delaney's excluded testimony, we are unable to determine the extent to which Rachel may have been prejudiced by the exclusion of the evidence. Consequently, a new custody hearing is required.

## 2. Privilege—Gossmeyer

Next, Rachel complains that the court erroneously barred the testimony of Rose Gossmeyer. Because this issue may arise on retrial, we address Rachel's contention.

■ Section 11 of the Abused and Neglected Child Reporting Act (Reporting Act) provides that "[a]ll records concerning reports of child abuse and neglect *** shall be confidential and shall not be disclosed except as specifically authorized by this Act or other applicable law." 325 ILCS 5/11 (West 1998).

While Rachel is correct in pointing out that the admissibility of testimony rather than of a record or report is at issue in the instant case, section 11 provides that "it is a Class A misdemeanor to permit, assist, or encourage the unauthorized release of any information contained in such reports, referrals or records." 325 ILCS 5/11 (West 1998). Consequently, this confidentiality provision applies not only to written records and reports but also to testimony regarding information contained in such reports.

■ Section 11.1(8) of the Reporting Act authorizes disclosure of records to:

> "[a] court, upon its finding that access to such records may be necessary for the determination of an issue before such court; however, such access shall be limited to in camera inspection, unless the court determines that public disclosure of the information contained therein is necessary for the resolution of an issue then pending before it." 325 ILCS 5/11.1(8) (West 1998).

After interviewing Gossmeyer *in camera*, the trial judge ruled that, because Barbara Carlson had already testified regarding the same interview of D.S., Gossmeyer's testimony would not be necessary for the determination of custody.

■ Rachel argues that, while the court could conduct such an *in*

*camera* examination of DCFS records, section 10 of the Reporting Act provides separately for witnesses. That section provides:

> "Any person who makes a report or who investigates a report under this Act shall testify fully *in any judicial proceeding resulting from such report,* as to any evidence of abuse or neglect, or the cause thereof. \*\*\* No evidence shall be excluded by reason of any common law or statutory privilege relating to communications between \*\*\* the child subject of the report under this Act and the person making or investigating the report." (Emphasis added.) 325 ILCS 5/10 (West 1998).

Section 10, however, does not apply because the instant proceeding is not a "judicial proceeding resulting from [a] report" under the Abused and Neglected Child Reporting Act. 325 ILCS 5/10 (West 1998). Rather, it is a custody proceeding brought pursuant to section 602 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/602 (West 1998)). Consequently, we conclude that the trial judge did not err in refusing to permit Gossmeyer's testimony.

### 3. Sufficiency of the Evidence

In light of our decision to reverse and remand for further proceedings, we express no opinion as to the sufficiency of the evidence supporting the custody determination.

### CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is reversed in part and affirmed in part and the cause is remanded for further proceedings consistent with this decision.

Affirmed in part and reversed in part; cause remanded.

McDADE and SLATER, JJ., concur.