**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230228-U

Order filed February 2, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| SAHIL GARG, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Petitioner-Appellee, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-23-0228 |
| | ) | Circuit No. 12-F-813 |
| | ) | |
| JENNIFER M. PAGONE, | ) | Honorable |
| | ) | Leah M. Bendik, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Brennan and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  (1) The circuit court did not abuse its discretion when it denied respondent's motion to compel against the guardian *ad litem* seeking response to written discovery and deposition because the guardian was not a "party" to the lawsuit and her counsel failed to issue a subpoena. (2) The circuit court did not err in denying respondent's motion to compel her minor child's therapy records based on her counsel's procedural missteps. (3) The circuit court did not err in denying respondent's motion to compel the depositions of her minor child's therapists. (4) The circuit court's ruling to grant petitioner's motion to suspend respondent's parenting time was not against the manifest weight of the evidence.

¶ 2    Sahil Garg, the father of minor child S.G., filed an emergency petition to suspend the mother, Jennifer Pagone's, parenting time based on allegations of physical and sexual abuse. During discovery, Garg successfully quashed the various subpoenas Pagone issued seeking S.G.'s mental health records and depositions. Following a trial, the circuit court granted Garg's petition and suspended Pagone's parenting time indefinitely. On appeal, Pagone argues the court erred in its discovery rulings. She also asserts Garg failed to satisfy his burden to support his petition. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    S.G. was born on July 30, 2011, and was the only child born of the parties' relationship. The parties were never married. The record reveals that Pagone has a history of behavior that has endangered S.G. On two separate occasions when S.G. was an infant, Garg successfully obtained orders of protection against Pagone stemming from a suicide attempt and other endangering behavior in S.G.'s presence. On December 12, 2012, the circuit court entered a custody judgment and joint parenting agreement, awarding Garg primary physical custody of S.G.

¶ 5    On September 13, 2013, the court modified the custody judgment, awarding Garg sole decision-making and custody over S.G. The order set forth certain visitation rights for Pagone, limiting her parenting time to three days per week. Nearly two years elapsed before the parties entered into a graduated parenting schedule on July 16, 2015. The agreed order increased Pagone's visitation to one overnight per week, with the possibility of an additional increase to alternating weekends, contingent upon Pagone's completion of court ordered therapy and psychiatric treatment for six months.

¶ 6    On May 11, 2020, Garg filed an emergency petition to suspend Pagone's parenting time pursuant to sections 603.10 and 607.5 of the Illinois Marriage and Dissolution of Marriage Act

(Act). 750 ILCS 5/603.10, 607.5 (West 2018). In his petition, Garg alleged that S.G. was subjected to recurrent physical and verbal abuse by Pagone. In the accompanying affidavit, Garg contended that Pagone struck S.G. multiple times during the most recent parenting weekend in which S.G. was staying at his mother's residence. He averred that S.G. refused to speak immediately after the incident but recounted the ordeal to his father 11 days later. Garg further stated that 15 days after the incident, S.G. confided in his father that Pagone sexually abused him and that this abuse occurred repeatedly over multiple years.

¶ 7      The following day, the parties appeared before the court for an initial status hearing on Garg's emergency petition. By stipulation, the court indefinitely suspended Pagone's parenting time until further order and set a hearing date.

¶ 8      The parties reconvened for an evidentiary hearing on June 5, 2020. Garg supported his petition by testifying to the incident; submitting photographs of the various bruises and wounds on S.G.'s hands, arms, legs, and back he took the day of the incident; and detailing his discussion with S.G. during which his son told him about Pagone's recurrent acts of sexual molestation. Pagone maintained that she never struck her son to the extent that it caused bruising and denied any inappropriate contact.

¶ 9      Based on the evidence presented at the hearing, the court granted temporary relief by suspending Pagone's parenting time. Due to the allegations and the parties' history, it appointed a guardian *ad litem* (GAL) to investigate the alleged inappropriate conduct and the mental health statuses of S.G. and Pagone. The court authorized the GAL to the "same notice and opportunity to participate, including Discovery, in this matter, as are afforded to counsel of record for the parties."

¶ 10    On October 9, 2020, when before the court on status of the investigation, the GAL stated S.G. was actively in counselling and was "really, really struggling with the idea of seeing his mom because of past traumatic events." At the hearing on Pagone's petition for interim and prospective attorney fees and costs in March 2021, the parties indicated that the GAL had concluded her investigation. Pagone's counsel also requested, and was granted, permission to conduct discovery. Thereafter, Pagone issued a subpoena *duces tecum* to Gloria Cockerill, S.G.'s therapist, which sought documents containing her medical evaluations of the child and all communications that Cockerill had with Garg and the GAL. Within the subpoena for records, Pagone also sought Cockerill's deposition.

¶ 11    On September 24, 2021, Garg filed a motion to quash Pagone's subpoena, claiming her requests were for confidential and privileged medical records, the release of which would violate the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) and the Health Insurance Portability and Accountability Act of 1996 (HIPAA). 740 ILCS 110/1 *et seq.* (West 2020); 45 C.F.R. § 164.508 (2018). Garg argued that Pagone's failure to obtain leave of court or written consent forms in compliance with these statutes invalidated the subpoena. Further, he represented that Cockerill invoked statutory privilege on behalf of S.G. which prevented compelling her production of the requested documents or sitting for her deposition. See 740 ILCS 110/10(a)(1) (West 2020).

¶ 12    In reply, Pagone filed a motion to compel Cockerill's deposition and a petition for rule to show cause. Within her motion and petition, Pagone refuted the statutory analysis in Garg's motion, arguing that as S.G.'s mother, she is expressly entitled to a copy of her son's mental health records pursuant to the Confidentiality Act. *Id.* § 4(a)(1). Pagone's motion also indicated that documents already disclosed in discovery, including an email authored by Cockerill and a

4

report from S.G.'s school, included mental health diagnoses for S.G. of an unknown origin that were discoverable to her. Cockerill filed written objections to Pagone's subpoena, arguing it violated the Confidentiality Act. Cockerill's pleading included a request for the entry of a protective order alleging that Pagone's counsel "barge[d] in on a closed-door therapy session with a child" unannounced, to personally deliver the subpoena.

¶ 13   Following a hearing on October 15, 2021, the court denied Pagone's motion to compel and rule to show cause. It stated that her attempt to issue a subpoena without court order was noncompliant with the Confidentiality Act but reserved judgment on whether Pagone was entitled to S.G.'s records under the Act should she follow proper protocol.

¶ 14   A month later, the court quashed the subpoena deeming it overbroad and noting its failure to comply with sections 5 and 10 of the Confidentiality Act. *Id.* §§ 5, 10. The court did, however, grant leave to issue another subpoena with the forewarning that "before [Pagone's counsel] serve[s] that subpoena, [Pagone's counsel] need[s] to seek an order from the Court" because, according to the court, section 10 of the Confidentiality Act required that a subpoena for records in this context "must be accompanied by a written order issued by the judge." Later, in November, Pagone prepared a second subpoena[1] and filed a motion for leave to serve it on Cockerill. Garg and Cockerill filed responses to Pagone's motion. Garg's response argued that the procedure and requests continued to run afoul of the Confidentiality Act. Cockerill maintained her assertion of the Confidentiality Act privilege on S.G.'s behalf. Her response also clarified that she was no longer actively treating S.G.

---

[1] Pagone's second subpoena was a subpoena for Cockerill's deposition. Pagone appended an exhibit thereto that requested Cockerill produce documents relating to S.G.'s treatment and her communications with Garg.

¶ 15 The issue of whether Pagone could access S.G.'s documents from therapy and depose Cockerill *via* subpoena again came before the court in January 2022. Following arguments, the court struck Pagone's second subpoena. It cited *United States v. Nixon*, 418 U.S. 683 (1974), to find the subpoena improper in that Pagone failed to show the documents requested were not otherwise procurable through the exercise of due diligence by using the statutory avenues afforded to her under sections 4, 5, and 10 of the Confidentiality Act. 740 ILCS 110/4, 5, 10 (West 2018). As S.G.'s mother, the court found that there was "no need to issue the subpoena because she c[ould] avail herself to the consent form" which, if directly tendered to the therapists, conferred her the statutory right to access her son's mental health records. *Id.* §§ 4(a)(1), 5. As the court put it, Pagone's counsel opted for a subpoena which requires judicial intervention but "[t]here are two different avenues you can go on this, and I think you have to [g]o down the other avenue, the consent avenue." It concluded that so long as Pagone avails herself to the "proper channels" to access S.G.'s records per the statute, it believed "she could then depose the therapist at that point too," as the privilege of Cockerill's asserted confidentiality would be extinguished. In part, the court's order identified its denial of Pagone's motion was pursuant to sections 4, 5, and 10 of the Confidentiality Act. *Id.* §§ 4, 5, 10.

¶ 16 On May 16, 2022, the court entered an order placing deadlines for written and oral discovery as August 4, 2022, and September 4, 2022, respectively. Soon thereafter, a new judge was assigned to preside over the parties' litigation.

¶ 17 In August 2022, Pagone filed motions to compel the production of documents and depositions of Cockerill and the GAL. She also filed a motion to compel the deposition of an additional therapist to S.G., Gabriel Cardenas; however, the motion was unsupported with

6

exhibits despite internal reference thereto.[2] Collectively, the motions described Pagone's counsel's efforts to procure S.G.'s therapy documents and witnesses' depositions following the hearing result in January 2022.

¶ 18    According to Pagone's motion to compel Cockerill's deposition, her counsel submitted a release form to Cockerill in efforts to obtain S.G.'s records in accordance with the Confidentiality Act. *Id.* § 5(b). In a letter tendered on March 3, 2022, Cockerill's counsel wrote that she was in receipt of the signed consent and provided the estimated copying charges of the records, dictated by her company's copying rates. Pagone's counsel sent a letter on June 20, 2022, indicating she would pay the "actual" copying cost related to the records and providing notice of an impending subpoena to depose. On July 26, 2022, Pagone's counsel served a deposition subpoena upon Cockerill after Cockerill's counsel indicated acceptance of service on her behalf. The subpoena was issued without court order.

¶ 19    Pagone's motion to compel against the GAL revealed she initially propounded a notice to produce upon the GAL, to which the GAL responded that she was not a party to the lawsuit and therefore a notice to produce is inappropriate. Pagone then issued a notice of deposition and amended notice of deposition, the latter of which scheduled the GAL's deposition for August 15, 2022. The deposition riders attached to the notices requested S.G.'s records and communications

---

[2]The narrative in Pagone's motion to compel Cardenas's deposition was later explored at the presentment on her motions to compel. The motion alleged that Pagone's counsel served a subpoena upon the therapist. Cardenas filed a motion to quash on September 6, 2022, which largely cited the same deficiencies previously identified by Garg and Cockerill. Namely, Pagone's subpoena to Cardenas requested records but that instrument was neither accompanied by a written order of court nor a consent. 740 ILCS 110/10(d) (West 2020). Furthermore, Cardenas's motion to quash argued that the subpoena violated HIPAA for its failure to append a separate authorization for the requested psychotherapy notes. See 45 C.F.R. § 164.508(b)(3)(ii) (2018).

7

with Garg. In an August 12, 2022, letter, Pagone's counsel canceled the GAL's deposition stating the GAL "has refused to produce requested documents prior to her deposition[.]" The GAL responded *via* email maintaining the notice to produce was improper. Nonetheless, she disputed the letter and reassured Pagone's counsel that the requested documents were "ready and [she was] willing to attend the deposition," but noted Pagone's cancellation.

¶ 20　　　　On September 2, 2022, at the initial presentment on Pagone's motions to compel, the court denied the motions against Cockerill and Cardenas citing Pagone's failure to comply with section 10(d) of the Confidentiality Act. *Id.* §10(d). Although Pagone's counsel had prepared and served a consent form prior to the issuance of the subpoenas, the subpoenas were not accompanied by the written consent. *Id.* The court explained its concern with Pagone's recurrent noncompliance with the Confidentiality Act, later adding,

> "And here we are, two days before the close of discovery that was set in the trial status. And so I mean, that's why I'm not inclined to *** go[ ] into a hearing, or brief this matter, because it's simply put. I'm reading the statute. And the subpoenas in your own description of them did not comply with the statute."

¶ 21　　　　The court noted that the motion to compel against Cardenas referenced nonexistent exhibits and used an erroneous timeline where it "didn't make sense," and therefore prevented the court's evaluation.

¶ 22　　　　The GAL pointed out that Pagone's counsel issued a notice to produce as if she was a party to the case. She suggested to Pagone's counsel that if he served a subpoena instead, she would

> "answer it, or you give me a rider to my deposition to being up, and I will bring them.

8

***

> "[I]f proper protocol had happened, I let him know all the documents were ready."

¶ 23    Cardenas's counsel stated that Pagone's consent form failed to "compl[y] *** not only [with] the [Confidentiality Act] ***, but also, the obligatory provisions of HIPAA." Further, Cardenas's counsel added, "I was attempting to assist counsel in doing it right" by providing a compliant form to Pagone's counsel, but Pagone responded by filing a motion to compel.

¶ 24    Pagone's counsel argued that he was following the prior judge's direction. The court responded,

> "what you served on them did not comply with Section 10, even though in January, when [the prior judge] ruled on this previously, the problem, the reason it was quashed before, it did not comply with Section 10."

¶ 25    Pagone's counsel requested the court make an explicit ruling on the consent form to support his document requests. The court summarized its findings as follows:

> "[T]he motion with regard to Cardenas is deficient on its face. It has no exhibits attached. It's denied in its entirety.
>
> With regard to [the GAL], for the reasons that she argued about the procedure filed, and the fact that she is not a party to the case, the motion is denied.
>
> And finally, with regard to *** Cockerill, I am finding that the subpoena was deficient as described, and the request for the – the request to produce is also denied for the reason that consent was insufficient, and under Section 10, just to be clear."

¶ 26        Discovery concluded and Garg's petition advanced to a three-day trial which began on October 3, 2022. During Garg's case-in-chief, Pagone maintained that she did not abuse S.G. She conceded that she had not seen S.G. in more than two-and-a-half years and agreed that she had not had meaningful parenting time for three-and-a-half years. On the advice of her counsel, she did not speak with the GAL. Despite knowing that the GAL had information from S.G.'s therapists that the GAL could have provided her, Pagone did not contact the GAL. Garg testified on S.G.'s condition. According to Garg, S.G. went through bouts of being "frozen" at school, prompted by visual and auditory triggers relating to his mother, and he continued to experience "constant episodes" at home. Due to his poor condition, he was only enrolled in fifth grade for seventeen days before Garg began homeschooling. Garg also introduced several of S.G.'s handwritten notes into evidence. In a June 2020 therapy note, S.G. listed one of his fears as visiting his mother. In a student interview form from his school, S.G. divulged that he worried about his mom hitting him and doing "dirty stuff."

¶ 27        The October trial was supplemented with the testimony of Garg's retained medical expert, Dr. Frank Cushing,[3] who possesses an Illinois license in clinical psychology, school psychology, and sex offender evaluation. Cushing testified that since receiving his license in psychology—a timespan covering over four decades—he has treated and evaluated "scores" of children who were victims of sexual abuse. He was "99 percent" certain the allegations at issue were not fabricated. He reviewed documents prepared by S.G.'s therapists, physician, and school. Specifically, he reviewed Cardenas's written report that described discussions with S.G. where he detailed the purported sexual abuse. Cushing indicated Cockerill's opinion of S.G.'s catatonia "as kind of a turtle reaction" was a good description. He also drafted a report after

---

[3]The record indicates Pagone's counsel deposed Cushing.

conducting his own psychological evaluation of S.G. and diagnosed the child with post-traumatic stress disorder (PTSD), the cause of which being Pagone's "physical, sexual and emotional abuse[.]"

¶ 28    The GAL testified that she met with the parties and separately with S.G. on multiple occasions. She also testified to a report by one of her agents taken during a victim sensitive interview where S.G. conveyed Pagone's abuse to an investigator with the Du Page County Child Advocacy Center. Early in the GAL's investigation, Pagone became noncommittal, and on the advice of her counsel, refused to meet with the GAL. The GAL recommended that Pagone's parenting time be suspended indefinitely.[4] During her case-in-chief, Pagone testified that she never sexually abused S.G. and did not cause the bruises featured in the photographs taken by Garg. Rather, Pagone asserted that Garg was the abuser and had coached or coerced S.G. to falsely accuse his mother. On cross-examination, Pagone recalled an instance where she spanked S.G.'s bottom in response to his antics while dining at a restaurant.

¶ 29    At the trial's conclusion, the court held that pursuant to section 603.10, Garg proved by a preponderance of the evidence that Pagone engaged in conduct that seriously endangered S.G.'s mental health, causing lasting, extensive mental and emotional harm. 750 ILCS 5/603.10 (West 2020). It found S.G.'s handwritten notes that conveyed his fears about visiting his mother and Cushing's report created "no dispute that the child has suffered great harm to his mental and physical health." The court suspended Pagone's parenting time until further order and granted Garg sole decision-making authority on S.G.'s behalf.

---

[4]The GAL initially recommended "permanent" suspension of Pagone's parenting time but clarified that the parenting time should be "permanent until such time as Mom were to do things that could show this Court that there would be a reason to change that."

11

¶ 30    The court memorialized its finding in a November 1, 2022, written order. It found the testimony of Garg, Cushing, and the GAL credible. Conversely, it found Pagone's testimony and denials of committing abuse not credible. The order clarified Pagone must complete sex offender treatment, parenting classes, psychiatric treatment, and provide verification before it would consider resuming Pagone's parenting time with S.G. Pagone filed a motion to reconsider the court's order which the court denied in an April 14, 2022, order. The order also granted Garg's request to reallocate the GAL's fees equally among the parties.

¶ 31    Pagone timely appealed.

¶ 32                              II. ANALYSIS

¶ 33    On appeal, Pagone asserts that the court erred in denying her motions to compel certain depositions and for failing to order the production of S.G.'s therapy records. She argues this failure violated her due process rights by precluding her access to her minor child's mental health records. Pagone also claims that Garg failed to produce sufficient evidence at trial to support his petition.

¶ 34                        A. Denial of Motions to Compel

¶ 35    Pagone claims that the circuit court erred in refusing to permit her access to S.G.'s therapists' records. In the same vein, she asserts the court ruled erroneously by not compelling the GAL, whom she argues is a party to this litigation, to answer her written discovery requests. Pagone also maintains that it was reversible error for the court to deny her motions to compel the GAL's and therapists' depositions, despite the hearing on her motions occurring two days before the close of discovery and a month before trial. As argued, Pagone presents two distinct discovery issues: first, whether she was entitled to record production from these individuals, and

12

second, whether she was entitled to depose them. To the extent these issues require a separate analysis, we have delineated so below and address Pagone's appellate contentions in turn.

¶ 36    Absent an abuse of discretion, we will not interfere with the circuit court's pretrial discovery rulings. *Habitat Co. v. McClure*, 301 Ill. App. 3d 425, 444 (1998). Similarly, we will not overturn a circuit court's determination on whether to quash a subpoena absent an abuse of discretion. *People v. Paris*, 295 Ill. App. 3d 372, 378 (1998). However, much of Pagone's discovery argument relies on her purported entitlement to S.G.'s mental health records under certain provisions of the Confidentiality Act. This requires statutory construction, a pure question of law, that we review *de novo*. *Roberts v. Alexandria Transp., Inc.*, 2021 IL 126249, ¶ 28.

¶ 37    1. Denial of Motion to Compel against the Guardian *Ad Litem*

¶ 38    First, Pagone asserts the court erred when it denied her motion to compel the GAL's deposition. A guardian *ad litem*'s duties are statutorily defined. See 750 ILCS 5/506(a)(2) (West 2020).[5] When a minor child is the subject of an abuse petition, "the appointed GAL is required to meet with the minor, assess the circumstances, and determine what disposition might be in the minor's best interest." *People v. Austin M.*, 2012 IL 111194, ¶ 69. The GAL "may be called as a witness for purposes of cross-examination regarding" his or her "report or recommendations." 750 ILCS 5/506(a)(2) (West 2018). Further, the GAL "shall investigate the facts of the case and interview the child and the parties." *Id.* Between the three statutorily defined roles for the representation of a child—which include an attorney and child representative—the GAL "is the most associated with the judicial process." *Nichols v. Fahrenkamp*, 2019 IL 123990, ¶ 18. A

---

[5]Subsequent to the parties' trial, the legislature amended the portion of the Illinois Marriage and Dissolution of Marriage Act outlining a GAL's duties to include, in part, that a GAL "shall be available for deposition before a final hearing or trial *notwithstanding any other discovery cutoff*" and permits a GAL's filing of pleadings and subpoenas at the court's discretion. (Emphasis added). See Public Act 103-126, § 5 (H.B. 1555) (eff. Jan. 1, 2024).

GAL's responsibilities to the court indicate that the GAL "is not an 'advocate' in the manner of either the child's attorney or a child representative." *Id.*

¶ 39 In *Nichols*, our supreme court reviewed the current role a guardian *ad litem* undertakes when appointed pursuant to the Act. *Id.* ¶¶ 24-30 (examining the historical evolution of guardian *ad litems*' duties in Illinois). Contemporary Illinois case law views a guardian *ad litem* "as a reporter or a witness and not as an advocate." *Id.* ¶ 35 (citing cases). In contrast to the outdated view that a guardian *ad litem* acts as an "advocate" and represents a ward, the position functions as the "eyes and ears of the court" and not as the ward's attorney. *Id.* (citing cases); *In re Mark W.*, 228 Ill. 2d 365, 374 (2008) (citing *In re Marriage of Wycoff*, 266 Ill. App. 3d 408, 415 (1994)); *In re Guardianship of Mabry*, 281 Ill. App. 3d 76, 88 (1996).

¶ 40 Here, Pagone issued written discovery requests and interrogatories to the GAL on June 30, 2022. The GAL responded that she was not a party to the litigation, but rather the court's witness, and indicated that the requests were therefore improper. On appeal, Pagone contends that the GAL was required to respond to her propounded discovery and in support of her argument, directs our attention to Illinois case law identifying a guardian *ad litem* as a "party" to the proceeding. *In re Griesmeyer*, 302 Ill. App. 3d 905, 913 (1998). She also points out that the court empowered the GAL with the same notice and opportunity to participate in discovery in this case.

¶ 41 We find the GAL was not a party to the case. While *Griesmeyer* explained that a guardian *ad litem* "as a representative of a minor *** is a party to the action" such a view is based on the outdated perception that a GAL is an advocate for the minor child. *Griesmeyer*, 302 Ill. App. 3d at 913-14. In contrast, here, the GAL acted in her role as a reporter and witness to the court. See *Nichols*, 2019 IL 123990, ¶ 35. Pagone is correct that the circuit court's June 5,

14

2020, order appointing a GAL for this matter entitled the GAL to an equal opportunity to participate in discovery. This by no means saddled the GAL with the discovery responsibilities that a party must comply with; rather, it granted access to discoverable documents so that the GAL could satisfy her obligations as the "eyes and ears of the court." *Id.*

¶ 42    As a non-party, a subpoena is the appropriate mechanism for procuring relevant records from a GAL. See, *e.g.*, *Carlson v. Jerousek*, 2016 IL App (2d) 151248, ¶ 72 ("When a party seeks the production of an item from a nonparty, it must issue a subpoena to that party."); *Redmond v. Central Community Hospital*, 65 Ill. App. 3d 669, 674 (1978) ("[I]t is obvious that the [discovery] rules were intended to provide a party the means to discover relevant matter from other parties by motion or upon written request and, from third persons, through the use of subpoenas."). Moreover, Illinois Supreme Court Rule 204(a)(2) provides that a deponent shall respond to a lawful subpoena at least seven days prior to the deposition. Ill. S. Ct. R. 204(a)(2) (eff. July 1, 2014).

¶ 43    Here, Pagone's counsel never issued a subpoena to the GAL. Indeed, her counsel argued in correspondence with the GAL that "Subpoenas are for those who are not before the court." While a guardian *ad litem*'s report or recommendation to the court is subject to cross-examination, thereby indicating the documents relied upon are discoverable (See 750 ILCS 5/506(a)(2) (West 2020)), Pagone's counsel utilized an improper procedure to procure the records.

¶ 44    Pagone separately asserts error in denying her the opportunity to depose the GAL. Compounding the above procedural errors, Pagone's counsel sent a notice of deposition and amended notice of deposition with riders attached seeking all documents relating to any communications with S.G.'s care providers, communications with S.G. and Garg, and documents

prepared by the GAL used for the basis of her observations and opinions. Pagone's counsel then sent a letter three days prior to the GAL's scheduled deposition date cancelling the GAL's deposition based on her "refus[al] not to produce requested documents prior to her deposition *** and because two other deponents, whose depositions I needed to take before [the GAL's], have resisted their subpoenas ***." Despite counsel's failure to comply with the necessary procedure, the GAL nonetheless responded that she collected the documents from the deposition rider requests and was prepared to sit for her deposition. As such, we find that the premature termination of her deposition, regardless of the procedural deficiencies in not subpoenaing the GAL, relinquished Pagone's right to depose and discover documents requested from the rider of her notice of deposition. *Batterman v. Consumers Illinois Water Co.*, 261 Ill. App. 3d 319, 321 (1994) ("Waiver is an express or implied voluntary and intentional relinquishment of a known and existing right.").

¶ 45        Based on Pagone's waiver and failure to abide by the appropriate subpoena procedures in place for non-parties, we find the court did not abuse its discretion when it denied Pagone's motion to compel against the GAL. It was Pagone's counsel, at no fault of the GAL, who prematurely terminated her set deposition. This remained true even after the GAL informed Pagone's counsel that she had compiled the requested records and was prepared to sit for her deposition.

¶ 46                    2. Denial of Motion to Compel against S.G.'s Therapists

¶ 47        Second, Pagone claims that she validly attempted to procure S.G.'s records from Cockerill and Cardenas pursuant to the Confidentiality Act. Specifically, as S.G.'s mother, Pagone asserts that she did not have to comply with section 10 of the Confidentiality Act to

16

procure the records; rather, her status as S.G.'s mother and her executed consent form that was provided to each therapist was sufficient.

¶ 48    The Confidentiality Act's purpose is plain: "preserve the confidentiality of the records and communications of persons who are receiving or who have received mental-health services." *Novak v. Rathnam*, 106 Ill. 2d 478, 483 (1985). In an effort to achieve this purpose, the Confidentiality Act provides that "[a]ll records and communications shall be confidential and shall not be disclosed except as provided in this Act." 740 ILCS 110/3(a) (West 2020). The term "record" as defined in the Act, encompasses "any record kept by a therapist *** in the course of providing mental health *** service to a recipient concerning the recipient and the services provided." *Id.* § 2. The term "communication" includes "any communication made by a recipient or other person to a therapist *** during or in connection with providing mental health *** services to a recipient." *Id.* Our supreme court has noted the Confidentiality Act, as a whole "constitutes a strong statement by the General Assembly about the importance of keeping mental-health records confidential." *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 60 (2002). And for good measure; in the realm of mental health care, confidentiality is essential as it motivates the pursuit of needed treatment and encourages candor once treatment is obtained. See *id.*

¶ 49    The Confidentiality Act enumerates a limited list of persons who are entitled to inspect and copy a mental health recipient's records. 740 ILCS 110/4(a) (West 2020). Among the persons listed in the limited class entitled to a recipient's records are "the parent *** of a recipient who is under 12 years of age[.]" *Id.* § 4(a)(1). A written consent from persons listed in section 4 is required to disclose records and communications to persons not enumerated. *Id.* § 5(a). In addition to signature and attestation requirements, section 5 sets forth seven prerequisites

17

that must be included within a valid written consent for disclosure. See *id.* § 5(b). We have held only one parent's written consent is sufficient to permit disclosure based on the Confidentiality Act's plain language. *In re Marriage of Troy S. & Rachel S.*, 319 Ill. App. 3d 61, 65 (2001); 740 ILCS 110/4(a), 5 (West 2020).

¶ 50    Section 10 of the Confidentiality Act states that during a civil proceeding:

"No party ***, nor his or her attorney, shall serve a subpoena seeking to obtain access to records or communications under this Act unless the subpoena is accompanied by a written order issued by a judge or by the written consent under Section 5 of this Act of the person whose records are being sought, authorizing the disclosure of the records or the issuance of the subpoena." 740 ILCS 110/10(d) (West 2020).

¶ 51    The importance of protecting confidentiality is solemnified through the potential penalties one faces for violating the Confidentiality Act and the scope of those who may seek remedy against such violations. Indeed, the Confidentiality Act somewhat amorphously provides for a private right of action to "[a]ny person aggrieved" from a violation and carries a criminal penalty for knowing and willful violators. *Id.* §§ 15, 16.

¶ 52                    a. Denial of Motion to Compel against Cockerill

¶ 53    Initially, we find that Pagone's efforts to procure Cockerill's therapy records and communications were deficient. Pagone's motion states that she tendered a signed consent form in accordance with section 5 of the Confidentiality Act to Cockerill on February 17, 2022. *Id.* § 5(b). In sum, the consent approved the disclosure of records and communications concerning S.G.'s treatment to her counsel. In response, Cockerill's counsel sent a March 3, 2022, letter confirming receipt of the consent form. The letter indicated that the sought records exceeded 150

18

pages, attached the contract entered by Garg and Cockerill, and explained based on Cockerill's employer's copying charges, the estimated fee for copying would be $104.42.[6] In a June 20, 2022, response letter, Pagone's counsel disputed the fee amount and stated Pagone "will pay the actual copying costs of your client's response." The only fees tendered for copying costs by Pagone, as alleged within her motion, was a check for $24.81.[7] While a copy of the check was not appended to her motion, the stated fee falls below the reasonable copying fees as defined by Illinois statute. 735 ILCS 5/8-2001(d) (West 2020) (clarifying the person requesting copies of records shall reimburse the health care practitioner for paper copies at a rate of "75 cents per page for the first through 25th pages, 50 cents per page for the 26th through 50th pages, and 25 cents per page for all pages in excess of 50"); see also *Solon v. Midwest Medical Records Association, Inc.*, 236 Ill. 2d 433, 447 (2010) (holding $20 handling fee is *per se* reasonable under section 8-2001). Based on our calculations, not accounting for handling and shipping charges, a reasonable fee for the requested records exceeds $57 pursuant to Illinois law.

¶ 54        Pagone next issued a subpoena for Cockerill's deposition on July 23, 2022. She attached a record and communications request to her subpoena. Erroneously, her subpoena was not "accompanied by a written order issued by a judge or by the written consent under Section 5 of [the Confidentiality] Act," a fact conceded by her attorney at the presentment on her motions to compel. 740 ILCS 110/10(d) (West 2020). The needle here is finely thread. Based on the plain language of the Confidentiality Act, it is irrefutable that section 4 grants a parent unrestricted

---

[6]Based on the itemized charges in the contract, our calculation of the copying charges for the records equals $96.42, without shipping costs included.

[7]Whether or not payment was ever conferred is unclear; Pagone's motion to compel states that she issued a check in the amount of $24.81, which conflicts with a July 23, 2022, letter purporting she sent a check for $23.40 to cover copying costs. Either sum is deficient for reasonable copying expenses of medical records under Illinois law. See 735 ILCS 5/8-2001(d) (West 2020).

access to their child's records if the child is a mental health recipient and is younger than 12 years of age. *Id.* § 4(a)(1); *cf. In re Marriage of Wendy W. & James W.*, 2022 IL App (1st) 201000, ¶¶ 37-38 (reviewing what records a parent is entitled to as contemplated by subsection 4(a)(3) of the Confidentiality Act, when their child is a mental health recipient, has attained the age of 12 but remains under 18 years old, and has objected to the disclosure of records). Pagone issued two noncompliant subpoenas directed towards Cockerill. After the subpoenas were quashed, a consent form for her attorney to receive a copy of S.G.'s records was properly effectuated. 740 ILCS 110/5(a), (b) (West 2020). However, she refused to pay reasonable fees for the records. When she subpoenaed the records for a third time, she again did so improperly by failing to accompany a written order of court or her written consent with the subpoena. *Id.* § 10(d). Her counsel's inability to comply with the procedure as outlined in the Confidentiality Act is fatal to her records request.

¶ 55                          b. Denial of Motion to Compel against Cardenas

¶ 56          We apply a similar rationale in upholding the denial of the motion to compel against Cardenas. First, we agree with the circuit court's determination that Pagone's motion to compel Cardenas's deposition is facially deficient. Pagone failed to attach any exhibits to her motion, despite the motion's internal reference to exhibits that chronicle her purported efforts to obtain S.G.'s records and depose Cardenas. The timeline in her motion is also nonsensical—she purports that her consent form was served to Cardenas on June 9, 2022, on *September 14, 2021*, she "subsequently" served a subpoena for his deposition, but he responded to this subpoena on "July 8, 20222 [*sic*]." Distinct from the motion against Cockerill, Pagone's motion against Cardenas indicates the therapist produced some documents based on her submitted consent requesting the same. Per Pagone's motion, Cardenas subsequently objected to his deposition by

20

invoking the statutory mental health therapist-patient privilege. Without the exhibits to her motion, we are incapable of determining whether the subpoena complied with the Confidentiality Act. We are likewise unable to determine whether the consent form was attached to the subpoena issued to Cardenas. In the absence of the exhibits, we presume the court acted correctly in denying Pagone's motion. *People v. Stewart*, 179 Ill. 2d 556, 565 (1997) (with an incomplete appellate record, we "indulge in every reasonable presumption favorable to the judgment from which the appeal is taken, including the presumption that the *** court ruled *** correctly, and any doubt arising from the incompleteness of the record will be resolved against the appellant.").

¶ 57   Underlying the denial of all three motions to compel, the circuit court was mindful that the presentment on Pagone's motions came two days prior to the close of discovery. Garg's petition was brought, in part, under section 607.5 of the Act which affords an expedited procedure. See 750 ILCS 5/607.5 (West 2020). Yet more than two years had elapsed between the filing of Garg's petition and the presentment of Pagone's motions to compel. Pagone had ample opportunity to follow the appropriate statutory avenues to obtain S.G.'s records from Cockerill and depose her as early as March 2021. Accordingly, the denial of the therapists' motions to compel as it relates to their deposition—two days prior to the close of discovery—was not an abuse of discretion.[8]

¶ 58   Unquestionably, the Confidentiality Act affords access to a parent for their child's records if the child is a recipient of mental health services and younger than 12 years of age. 740 ILCS 110/4(a)(1) (West 2020). This case, however, presents grave procedural missteps and

---

[8]While Pagone's delay appears a valid consideration in denying the GAL's deposition as well, prospectively, the new amendment to the Illinois Marriage and Dissolution of Marriage Act provides that a GAL "shall be available for deposition before a final hearing or trial *notwithstanding any other discovery cutoff*." (Emphasis added.) See Public Act 103-126, § 5 (H.B. 1555) (eff. Jan. 1, 2024). We reiterate that Pagone's failure to issue a subpoena upon the GAL serves as a sufficient basis for denying that motion to compel in its entirety. *Supra* ¶¶ 44-45.

repeated discovery errors in seeking to obtain records and depose witnesses. Considering the foregoing, we find that the circuit court did not abuse its discretion in denying the motions to compel Cardenas and Cockerill.

¶ 59                                 B. Sufficiency of the Evidence

¶ 60         Pagone also argues that the court's suspension of her parenting time heeded Garg's request as a "*de facto* termination of [her] parental rights" and claims that Garg did not present sufficient evidence to prove that Pagone was the individual who caused S.G.'s endangerment. Garg filed his emergency petition to suspend Pagone's parenting time pursuant to sections 603.10 and 607.5 of the Act. 750 ILCS 5/603.10, 607.5 (West 2018). Section 607.5 sets forth expedited procedures for the enforcement of allocated parenting time. 750 ILCS 5/607.5(a)-(b) (West 2018). This section compels a court to enter an order providing for various types of relief where it finds, by the preponderance of the evidence, that a parent has not complied with an approved parenting plan or a court order addressing the same. *Id.* § 607.5(c). Similarly, section 603.10(a) instructs the court to restrict parental responsibilities by entering an order as necessary to protect the child "if the court finds by a preponderance of the evidence that a parent engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development ***." *Id.* § 603.10(a). When such a finding is made, the court's order may fashion its parental restrictions in the form of "a reduction, termination, or other adjustment of ***parenting time" and require the completion of a treatment program to address the actionable behavior. *Id.* § 603.10(a)(1), (8).

¶ 61         The serious-endangerment standard is high; indeed, it has been described as an "onerous, stringent, and rigorous" burden to meet. *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 56 (quoting *In re Marriage of Diehl*, 221 Ill. App. 3d 410, 429 (1991)); see *In re K.E.B.*, 2014 IL

App (2d) 131332, ¶ 33 ("A visitation *restriction,* thus, must meet the serious-endangerment standard, which is more onerous than the best-interests standard" (emphasis in original)). Another appellate decision remarked that the court's determination of serious endangerment is an "extraordinary finding." *Heldebrandt v. Heldebrandt*, 251 Ill. App. 3d 950, 957 (1993).

¶ 62     Garg, as the petitioner seeking to restrict Pagone's parenting time, had to prove that Pagone's conduct to S.G. rose to the level of serious endangerment by a preponderance of the evidence. See *Diehl*, 221 Ill. App. 3d at 429. A circuit court "is vested with wide discretion in resolving visitation issues" and we will not interfere with the lower court's determination save an "abuse of discretion *** [citation], or where manifest injustice has been done to the child or parent [citation]." *In re Marriage of Anderson*, 130 Ill. App. 3d 684, 688 (1985). Depending on the nature of the issue raised, Illinois courts have reviewed visitation rulings under the lens of the manifest weight of the evidence standard. See *Heldebrandt*, 251 Ill. App. 3d at 954. Here, we find that the manifest weight of the evidence is the applicable standard of review because Pagone's challenge arises from the circuit court's factual determinations that Garg's evidence was sufficient to link her to the seriously endangering conduct. See *Mayes*, 2018 IL App (4th) 180149, ¶ 59. "A determination will be found to be against the manifest weight of the evidence only if the opposite conclusion is clearly evident [citation] or the determination is unreasonable, arbitrary, or not based on the evidence presented [citation]." *In re D.F.*, 201 Ill. 2d 476, 498 (2002).

¶ 63     Pagone stipulates that S.G. has been harmed, as evidenced by the photographs depicting bruising on S.G.'s body and his manifestation of PTSD symptoms. Her appellate argument focuses on purported deficiencies in the trial evidence establishing a causal connection sufficient to prove that she abused her minor child. She argues Garg's evidence merely consisted of

23

uncorroborated statements from S.G. amounting to nothing more than hearsay statements generated from a "game of perverse telephone." She advances the theory that Garg convinced S.G. to divulge Pagone as an abuser to the therapists.

¶ 64    Pagone's theory is unsupported by the record, and we disagree with her characterization of the trial evidence. Initially, as to S.G.'s statements upon which the court relied, our legislature has expressly provided that a child's prior statements relating to abuse allegations are admissible in a hearing concerning the allocation of parental responsibilities. 750 ILCS 5/606.5(c) (West 2018). A child's statements that relate to allegations of abuse will not be sufficient to support a finding of abuse if the statements are "uncorroborated or not subject to cross-examination." *Id.*

¶ 65    Our supreme court has stated that "corroborating evidence of abuse *** requires" independent evidence which supports the "logical and reasonable inference" that the abusive conduct as described in the hearsay statement occurred. *In re A.P.*, 179 Ill. 2d 184, 199 (1997) (discussing section 2-18(4)(c) of the Juvenile Court Act which mirrors admissibility language of a minor child's abuse statements in section 606.5(c) of the Illinois Marriage and Dissolution of Marriage Act). Rephrased, this evidence "makes it more probable that a minor was abused ***." *Id.* The form of corroboration is case specific and "can include physical or circumstantial evidence." *Id.* As explained below, we find there was ample corroborative evidence to support S.G.'s identification and the court's conclusion that Pagone was the abuser.

¶ 66    As addressed above, Garg took photographs of S.G.'s bruised body the day of the incident after retrieving S.G. from Pagone's residence. On cross-examination during her case-in-chief, Pagone admitted to previously subjecting S.G. to corporal punishment by spanking his bottom. Several written notes by S.G. were introduced into evidence, all referencing abuse at the hand of Pagone and some referring, at least peripherally, to sexual abuse. Garg's testimony

24

unveiled a pattern of physical clashes Pagone had with S.G. S.G. confided in Garg that he was the victim of Pagone's sexual abuse. Cushing found that S.G. was suffering from PTSD, the cause of which being Pagone, after he conducted an independent psychological evaluation of the child. The GAL's report was based in part on S.G.'s therapists' findings and S.G.'s discussion with an independent investigator during a victim sensitive interview where he stated his mother abused him. S.G. continued to endure bouts of unresponsiveness when subjected to different verbal and written stimuli referencing different permutations of the term "mother." These episodes were so severe they detracted from his schooling, ultimately requiring his withdrawal from a collaborative learning environment. Based on the evidence presented, we hold that it was not against the manifest weight of the evidence for the court to find Pagone's conduct rose to the level of serious endangerment and that Garg presented sufficient evidence to support this finding.[9]

¶ 67                                    III. CONCLUSION

¶ 68        The judgment of the circuit court of Du Page County is affirmed.

¶ 69        Affirmed.

---

[9]This is an expedited case pursuant to the provisions of Illinois Supreme Court Rule 311(a). Ill. S. Ct. R. 311(a) (eff. July 1, 2018). The appellant had great difficulty obtaining the complete record in this case, requiring multiple extensions to file the record on appeal, and subsequently, the parties' briefs, for which the court has found good cause. Therefore, good cause also exists to extend the time for decision.